## LEARY v. CITY OF YONKERS.

(Supreme Court, Appellate Division, Second Department.  June 10, 1904.)

1. MUNICIPAL CORPORATIONS—DEFECTIVE STREETS—FALLING SIGNS—INJURIES TO PEDESTRIANS.

A city is liable for injuries to a pedestrian, caused by the fall of a sign which the occupant of an adjacent building had hung over the sidewalk, insecurely fastened to a rod projecting from the building, and not supported by posts from the sidewalk, provided the servants of the city had either actual or constructive notice of the danger.

2. SAME—NOTICE—EVIDENCE.

Where, in an action against a city for injuries to a pedestrian by a falling sign suspended over the sidewalk, a civil engineer testified that the defect in the sign must have existed from 12 to 14 months, and would be observable on an ordinary inspection, but the evidence also tended to show that the defect was such as would not ordinarily have been detected by a policeman on the street, or other agent of the corporation in the ordinary discharge of his duties, and there was no evidence of actual notice to the city of the defects, plaintiff was not entitled to recover.

Appeal from Trial Term, Westchester County.

Action by Catharine Leary against the city of Yonkers.  From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, it appeals.  Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Francis A. Winslow, for appellant.

John F. Brennan, for respondent.

WILLARD BARTLETT, J.  The plaintiff was injured by the falling of a sign upon her while she was walking along a public street in the city of Yonkers.  This sign was affixed to the front of a building occupied by a jeweler, and is described as an artificial or imitation clock, made of iron and mortar.  Its obvious purpose was the advertisement of the business carried on by the occupant of the premises. The clock was suspended from the end of an iron bar which extended from the building over the sidewalk a distance of 5 feet 4 inches, so that the sign hung over the middle of the sidewalk at a height of about 13 feet above it.  It was not supported in any manner by anything upon the sidewalk itself, but was sustained solely by the projecting ironwork from the building to which it was attached.  The theory of the plaintiff's case was that this sign, which had been in position for about two years, had become dangerous and liable to fall, by reason of the wearing away of a portion of the ironwork at a point of contact between it and the artificial clock itself; that this condition had existed long enough to impute notice to the municipality; and consequently the city of Yonkers was liable for the consequences of the fall of the sign, inasmuch as it had neglected its duty under the law to keep the street in safe condition for public use.  There is a conflict in the decisions as to the liability of a municipal corporation for injuries suffered by a traveler upon a public street in consequence of the fall of insecure projections.  The duty of a municipal corporation to keep its streets in a safe condition for public travel, and to exercise reason-

able diligence for that purpose, is not questioned upon this appeal; but it is contended that under the authorities this duty is limited to cases where the insecure projection is sustained by supports resting upon the surface of the street itself, and does not extend to the case of an unsafe sign suspended from the front of a building, and so far above the street surface as not to constitute an obstruction to ordinary travel.

The precise question presented by this appeal has been decided adversely to the position of the plaintiff by the Supreme Judical Court of Massachusetts in Jones v. City of Boston, 104 Mass. 75, 6 Am. Rep. 194, where it was held that the city was not liable for the fall of a sign which the occupant of an adjacent building had hung over the sidewalk upon an insecurely fastened iron rod, even though the city had notice that the fastening was insecure. It seems to me, however, that it is impossible to harmonize that decision with the adjudications of the Court of Appeals of this state in the Awning Cases: Hume v. Mayor, 74 N. Y. 264; Bieling v. City of Brooklyn, 120 N. Y. 98, 106, 24 N. E. 389. In each of these cases, it is true that the awning which fell was supported by posts inserted in the street near or actually upon the sidewalk; but in each case the injury to the plaintiff was inflicted, not by reason of any defect in these supporting posts, but in consequence of the insecure manner in which the part of the awning nearest the building from which it projected was attached thereto. In view of this fact, I am unable to discover any principle upon which the presence of the posts as obstructions in the street could make any difference as to the liability of the defendant. The accidents were occasioned, not by the posts, but by the overhanging projections. If the municipality could be held liable for a failure to exercise reasonable care to keep the street in a safe condition as against the fall of such awnings, I am unable to perceive why it would not be equally liable if the awnings had been supported wholly from the adjacent buildings themselves.

Many of the leading cases on the subject under consideration were reviewed and discussed by the Supreme Court of Indiana in the case of Grove v. The City of Fort Wayne, 45 Ind. 429, 15 Am. Rep. 262, in which the defendant was held liable for injuries resulting from the fall of the cornice of the building, which projected over a sidewalk, and which was being constructed in such a manner as to be dangerous to persons upon the street. Cities organized under the general laws of Indiana have exclusive power over the highways and streets within the city, and special power to prevent the incumbering of the same by anything interfering with their free use. Under these powers, said the court—

"A city has not discharged her duty to the public when she has merely made the surface of the ground over which the traveler passes sufficiently smooth and level, and guarded by railings, to enable him to travel with safety and convenience by the exercise of ordinary care on his part. Obstructions entirely above ground may interfere quite as much with the safe and convenient use of a street or sidewalk as those upon the surface. Indeed, the danger from unsafe projections over a street would seem to be greater than from obstructions upon the surface. The latter may in many cases, with care, be avoided by the person passing. The former cannot, except by foregoing the use of the

street so far as to keep out of the way of the matter liable to fall. It will not do to say that a city has no power over a street above the surface. That would deprive her of the right to prevent the projection of signs and other obstructions over a street, not reaching to the surface, rendering the street impassable. The power of a city over her streets, and the right of the public to them, extends upwards indefinitely, for the purposes of their preservation, safe use, and enjoyment. And the duty of a city in this respect is commensurate with her power."

The charter of the city of Yonkers confers upon the common council within the city all the powers given by law to the commissioners of highways of towns, and also expressly empowers the common council to prevent the incumbrance of the streets, and to prohibit, and cause to be removed at the expense of the owner or occupants thereof, any structure encroaching upon the streets or other public places. Laws 1895, p. 1363, c. 635, tit. 6, § 6, subd. 27; p. 1371, tit. 7, § 1. Independently of these charter provisions, it has been expressly adjudged to be the duty of the city to keep the streets in a condition safe for public travel, and to exercise reasonable diligence to accomplish that end. Pettengill v. City of Yonkers, 116 N. Y. 558, 22 N. E. 1095, 15 Am. St. Rep. 442. The obligation of the defendant municipal corporation, therefore, under our law in respect to maintaining the safety of its streets, seems to be as great as that of a city in Indiana, as asserted in the case cited, and it seems to me that it may well be held to require the exercise of some care in reference to projections above the surface of the highway, even when they are not upheld by supports extending into the highway itself.

This view finds support in the case of Bohen v. City of Waseca, 32 Minn. 176, 19 N. W. 730, 50 Am. Rep. 564, a case which was argued before the Supreme Court of Minnesota in behalf of the defendant municipality by the late Cushman K. Davis, afterward a distinguished Senator of the United States. There the awning was fastened to the building by the nailing of the frame timbers to the same, and was further supported by braces extending from the awning to the side of the building. The charter of the city of Waseca provided that the common council should have "the care, supervision, and control of all the highways, bridges, streets and alleys, and public grounds, within the limits of the city." It was held that the city was liable for an injury inflicted by the falling of this awning. It was contended in behalf of the defendant that the city could only remove the awning by enacting an ordinance against the maintenance of such structures, which did not appear to have been done. But the court answered this objection by saying that even if the remedy by ordinance were exclusive, then, whether the council could be compelled to pass one or not, it would be clear negligence not to do so. "The council being charged with the care, supervision, and control of the streets, it is their duty to exercise the same in such manner as they are empowered to do, whether by ordinance or otherwise." In the same case it is said by the court:

"The injury for which plaintiff seeks redress in this action was occasioned by the falling upon him of a wooden awning, overhanging the sidewalk of a public street in the defendant city. The plaintiff alleges that from the manner of its construction, and from decay, the awning was, and for a long time had

been, in a condition dangerous and unsafe to passers upon the sidewalk. There is no sound reason why the duty of a municipal corporation to keep its streets 'in safe condition' should not require it to take reasonable precautions against dangers from overhead as well as underfoot. . If an awning, in a condition dangerous and unsafe to passers beneath it, is permitted to overhang a public street, it cannot be said that the street is in a safe condition. The danger and the unsafety may be as great, and the consequences as injurious, as in the case of a defect in the surface of the street."

The present case was submitted to the jury, not upon any claim that the municipality had tolerated the existence of a nuisance in the public street, as was the case in Wells v. City of Brooklyn, 9 App. Div. 61, 41 N. Y. Supp. 143, 158 N. Y. 699, 53 N. E. 1133, but solely upon the issue of the defendant's negligence in allowing the sign to hang over the sidewalk after it had notice or ought to have known of its dangerous condition. While I am of opinion that it might be chargeable on this ground, notwithstanding the fact that the artificial clock was in no manner connected with any support which formed an obstruction to travel on the sidewalk, I think the proof is insufficient to warrant a finding imputing notice to the municipality of any danger in its maintenance. The evidence in behalf of the plaintiff showed a break in the upright piece fastened into the ring on the clock, which an expert engineer testified had been there from 12 to 14 months, and would be observable "to the ordinary man who made an inspection of it." I cannot find any evidence, however, in this record, that the defect was such as would have been observable or could have been detected by a policeman on the street, or any other agent of the defendant corporation in the ordinary discharge of his duties. Assuming that a municipality owes a duty to the public in reference to dangerous signs overhanging the streets, the extent of that obligation is the exercise of reasonable care; and it would impose altogether too heavy a burden to hold that the agents of the defendant, in such a case as this, were bound from time to time to enter the premises of the owners or occupants of lands along the streets, and make a close examination of signs or other projections extending over the highway, for the purpose of ascertaining whether or not they were in a safe condition. I think that a municipality can be held liable for damages arising out of the dangerous condition of such projections, only in cases where notice of the danger has actually come to the servants of the corporation, or may be imputed to them while in the ordinary exercise of their duty. It is a common practice in our cities for the residents to maintain flagpoles in front of their dwellings, extending over the sidewalk, upon which to display flags on holidays or other occasions of public rejoicing. It does not seem to me that the municipality could be held liable for injuries inflicted by the fall of one of these poles upon a person passing underneath, unless the defective condition of the pole had come to the notice of the police, or had obviously existed for so long a period that the police, in the exercise of their functions, ought to have observed its condition. The record before us is destitute of any proof that there was any such obvious danger in the condition of the supports of the imitation clock which fell upon the plaintiff and caused her injuries. Indeed, the testimony rather tend-

ed to show that the fall of the sign was due to the action of a member of the family of the jeweler who maintained the sign in pulling up an awning, which' struck the imitation clock and knocked it down.

My conclusion is that the plaintiff did not prove enough to entitle her to a recovery, and that the defendant is entitled to a reversal of the judgment.

Judgment reversed, and new trial granted; costs to abide the event. All concur.