FRANK v. VILLAGE OF WARSAW.

(Supreme Court, Appellate Division, Fourth Department. December 28, 1906.)

MUNICIPAL CORPORATIONS—PEANUT ROASTER ON SIDEWALK—EXPLOSION.

The maintenance by the owner of a store of a peanut roaster between the sidewalk and the street cannot be held as matter of law a public nuisance, so as to make the village liable for injury to a pedestrian from explosion thereof; there being evidence that machines of the kind were in common use in the streets of cities and other villages, and that the trustees of the village had never heard of one of them exploding.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 1552, 1631.]

Spring and Williams, JJ., dissenting.

Appeal from Trial Term, Wyoming County.

Action by John Frank against the village of Warsaw. From a judgment on a verdict for plaintiff, and from an order denying a motion for new trial, defendant appeals. Reversed, and new trial ordered.

The plaintiff, a young man of 28 years of age, was injured on the 16th day of August, 1904, while walking along the sidewalk on the east side of Main

street, in the village of Warsaw, in the county of Wyoming, by the explosion of a patent peanut roaster standing on a platform in the street, causing pieces of glass to be thrown violently in his face and eyes, destroying his sight. The trial judge held as matter of law that the peanut roaster was an unlawful obstruction in the street, and that the defendant was liable, and submitted only the question of damages to the jury.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

E. E. Charles, for appellant.
E. M. Bartlett, for respondent.

NASH, J.  The village of Warsaw is an incorporated village containing 3,300 inhabitants. Main street, its principal street, is six rods wide. In 1904 one Coloross owned a brick store of two stories, with 20 feet frontage on the east side of that street, where he sold fruit, candies, nuts, and popcorn. The front of the store contained plate-glass windows. The sidewalk in front was 10 feet 7 inches in width, and covered with a wooden awning supported by two columns, resting on stone foundations at the outer edge of the walk. Coloross constructed the platform between these pillars flush with the sidewalk and 4 feet wide, and on this located his peanut roasting machine and popcorn heater. The machine was mounted on wheels; those in front being 2 feet, and those in the rear 2½ feet in diameter. The wagon was 5 feet in length and two in width. The popcorn case was 2 feet square and 26 inches in height. It was operated by steam generated by means of gasoline in a burner under the boiler, which held about three gallons of water, with an automatic feeder. There was a canvass top to the wagon and a tongue was attached to it so it could be moved readily. Its entire weight was about 450 pounds. Coloross purchased this machine May 2, 1904, and used it daily up to the time of the explosion. The machine was placed on the platform every morning about 7 o'clock and taken into the store in the evening about 10 o'clock. Water was put into the boiler nearly every morning, and about a gallon of gasoline was consumed daily in its operation. It was in place every business day, but not constantly operated. If a supply of the peanuts and popcorn was on hand, steam enough was kept up to heat them. There was a steam whistle on the machine which was sounded occasionally as sort of an advertisement of the business and of the contrivance. The noise could be heard for two or three blocks. The trustees of the village knew that this roasting machine was in the street on the platform in front of the store from day to day, and that it was in operation. They passed the store occasionally, were the customers of Coloross more or less, were about the streets often, and that this machine was operated by steam and was for roasting peanuts was apparent to any one who saw it. The peanut roaster was not an obstruction to public travel either upon the sidewalk or in the street. The platform on which it stood was laid over a brick pavement which sloped from the sidewalk to the gutter. It occupied the space between the sidewalk and the paved gutter. No part of the machine was in the street or liable to be hit or touched by passing vehicles. In this respect it differs entirely in character from the obstructions found in the authorities relied

upon to support the plaintiff's contention. In the Wells Case, most relied upon (Wells v. City of Brooklyn, 9 App. Div. 61, 41 N. Y. Supp. 143), a large show case of wood and glass had for several years stood upon the curb line of the street, originally fastened by means of an iron brace to an awning post. The day before the accident the case was knocked over by a collision with a truck and torn from its fastening. It was put back in position, but not fastened to the post in any manner. The next day the case was blown down by the wind and the plaintiff was hurt. The city was held liable upon the ground that the show case, being permanent in character, continuously maintained, and unauthorized, constituted a public nuisance, which it was the duty of the city to remove as soon as knowledge of its existence could fairly be attributed to it; that the officials of the city in the exercise of ordinary prudence ought reasonably to have anticipated that such an incumbrance was likely to be loosened by contact with vehicles and thus become dangerous. No such condition could have arisen from the presence of the Coloross machine in the place where it stood. It was not on the sidewalk or in the street where vehicles or pedestrians were liable to come in contact with it. It was movable, not a fixture, with an attendant in charge through the day who could move it if in the way at any time, and at night it was taken into the store. Eliminate the explosive character of the machine from the case, and the idea of its being an obstruction dangerous to the public travel, and therefore a nuisance, is absent; and no negligence could properly be imputed to the defendant for permitting its use by Coloross in his business. It was no more an obstruction, dangerous to public travel, than the posts which supported the awning over the walk in front of his store. An encroachment upon the street, which does not interfere with public travel, is not a nuisance per se. Bieling v. City of Brooklyn, 120 N. Y. 98, 24 N. E. 389; Hume v. Mayor, 74 N. Y. 64; Leary v. City of Yonkers, 95 App. Div. 126, 88 N. Y. Supp. 829. In the latter case an overhanging business sign, which had become unsafe, fell and injured the plaintiff while passing upon the sidewalk. It was held that the measure of the city's liability in respect to such sign was the exercise of reasonable care; that the city was not liable unless its servants in the ordinary discharge of their duties should have discovered that the sign had become unsafe. The two former were awning cases, in which it was held that reasonable diligence only was required on the part of the city to see that wooden awnings were kept in a safe condition.

Upon the question of the defendant's liability in this case, Hunt v. Mayor, etc., of New York, 109 N. Y. 134, 16 N. E. 320, seems to be directly in point. The general rule there laid down regarding the liability of municipal corporations for injuries occasioned by obstructions in the streets, deduced from the case, is stated in the syllabus as follows:

"There is no absolute guaranty or undertaking on the part of a municipal corporation that its streets or other constructions shall at all times and under all circumstances be in a safe and proper condition. Its obligation and duty extend only to the exercise of reasonable care and vigilance, and to create liability willful misconduct or culpable neglect must be established. The mere existence of a defect, rendering a street unsafe, from which a traveler sustains an injury, where the defect was not created by the act or consent

of the municipality, does not, independent of negligence, establish a culpable breach of duty on its part."

The action was brought to recover damages for injuries received by plaintiff on the 27th day of January, 1883, while lawfully passing along Broadway in the city of New York, by an explosion at one of the manholes of the American Heating & Power Company, at the junction of Broadway and Maiden Lane. The heating and power company had the consent of the city to use the street for steam pipes; but the city was empowered to prescribe proper regulations and conditions for the use of the streets for that purpose, and for an omission to prescribe proper regulations or exercise proper supervision over the work the city was liable for accidents attributable to such omission. It was insisted that the omission of the city to prescribe the manner of laying the steam pipes or to take any measures to guard against an explosion was an omission of duty which rendered it liable. The evidence tended to show that there was no reasonable ground for apprehending any danger from the proximity of the steam pipes to the gas pipes, which was the cause of the explosion. It was held that under such circumstances the omission of the city to make a regulation prescribing the manner in which the steam pipes should be laid furnished no evidence of negligence.

The language of the court in reaching its decision, by Andrews, J., is as follows:

"The fact of the explosion is itself a demonstration that the street was at the time in an unsafe and dangerous condition, and the only question is whether upon the evidence the city is, or may be, liable for the injury suffered by the plaintiff. The duty cast upon a municipal corporation to keep its streets in a safe condition for travel is not absolute, so as to impose liability upon the corporation in every case where a traveler, without fault on his part, sustains injury from a defective street. Its liability depends in all cases upon the fact whether it has omitted to exercise due care, under the circumstances, in their maintenance or reparation. The mere existence of a defect from which a traveler sustains injury does not, independently of negligence, establish a culpable breach of duty on the part of a municipality. The cases of injuries from obstructions placed in streets by third persons without the consent of the municipality, of which it has no notice, are illustrations of the principle that the liability of the municipality for the unsafe condition of its streets rests upon the basis of negligence, and not upon any obligation assumed or imposed by law to keep the streets at all times and at all hazards in an absolutely safe condition for travel. Where an injury happens from the defect of a roadway itself, or from a dangerous condition of the street occasioned by the act or consent of the municipality, negligence, as in the other cases mentioned, is the ground of liability. In the one class of cases the conclusion of negligence may be reached more easily than in the other, but the principle upon which the liability depends is the same in both, notwithstanding the difference in the circumstances. Where the defect is known, rendering the street unsafe or dangerous, the municipality is bound to be prompt and vigilant in removing it. It is at all times bound to exercise due care that the streets are safe and free from dangerous defects, and that they shall not become unsafe or dangerous. To this extent its duty is absolute. The language of the cases expressing the measure of duty resting upon a municipal corporation in respect to its streets, sewers, etc., has not always been carefully guarded, but the doctrine has been frequently reiterated in this court that there is no absolute guaranty or undertaking on the part of a municipal corporation that its streets or other constructions shall at all times and under

all circumstances be in a safe and proper condition, and that its obligation and duty extend only to the exercise of reasonable care and vigilance. McCarthy v. Syracuse, 46 N. Y. 194; Smith v. Mayor, etc., 66 N. Y. 295, 23 Am. Rep. 53; Ring v. Cohoes, 77 N. Y. 83, 33 Am. Rep. 574; Hubbell v. Yonkers, 104 N. Y. 434, 10 N. E. 858, 58 Am. Rep. 522. There must be willful misconduct or culpable neglect to create liability. It follows that negligence on the part of the city was an essential element of the plaintiff's case, and it was incumbent upon him to establish it, or to give evidence from which it could be inferred, before he was entitled to have the question submitted to the jury."

Within the rule thus laid down it was incumbent upon the plaintiff here to prove that there was reasonable ground for apprehension that an explosion would occur in the ordinary use of the machine and injury therefrom result to passers-by on the sidewalk or on the street. If the plaintiff was entitled to a presumption of negligence arising from the happening of the explosion, evidence that machines of this kind were in common use in the streets of other cities and villages, and the defendant's trustees had never heard of one of them exploding, offered by the defendant to rebut the presumption, should have been received. It was error, therefore, for the court to hold as matter of law that the maintenance of the peanut roaster by Coloross constituted a public nuisance, and that the defendant was liable, submitting only the question of damages to the jury.

The judgment should be reversed.

Judgment and order reversed, and a new trial ordered upon questions of law and fact, with costs to the appellant to abide the event.

McLENNAN P. J., concurs.

KRUSE, J. I concur in the opinion of Mr. Justice NASH that questions of fact were presented by the evidence in this case which should have been submitted to the jury, and that the trial court erred in holding as a matter of law that the defendant was liable for the injuries sustained by the plaintiff, resulting from the explosion of the boiler used in connection with the peanut roaster. The mere fact that the village trustees knew that the owner of the peanut roaster was in the habit of placing his machine within the bounds of the street and operating it there was not sufficient to warrant the court in holding as a matter of law that the village, through its proper officers, authorized or licensed the owner of the roaster so to place and operate it in the street, nor conclusively to establish that the village maintained a nuisance or authorized its maintenance. It was the duty of the village to use reasonable care, prudence, and foresight to keep the street free from conditions endangering the safety of the traveling public. And whether the village failed in its duty in that regard, in omitting to prevent the peanut roaster being placed and operated in the street, or in seeing that it was removed after it was placed there, was, I think, a question of fact for a jury. In determining that question, it was proper for the jury to consider any fact or circumstance tending to show that the village authorities could reasonably have apprehended the danger to persons in the street of placing and operating the roaster as it was placed and operated, together with the knowledge the proper

officers of the village had, or ought to have had, thereof, in the proper discharge of their duty.

SPRING, J. (dissenting). The plaintiff was lawfully on the sidewalk, and he had the right to assume that it was safe for him to pass over it. This assurance of safety existed because the defendant was charged with the affirmative obligation to keep the street in its entirety open for public travel. Cohen v. Mayor, 113 N. Y. 532, 535, 21 N. E. 700, 4 L. R. A. 406, 10 Am. St. Rep. 506; Callahan et al. v. Gilman, 107 N. Y. 360, 14 N. E. 264, 1 Am. St. Rep. 831. These are fundamental propositions. It has become also one of the settled propositions in this state that a permanent obstruction in a street or highway interfering with the convenience of the public or imperiling the safety of the traveler is an unlawful obstruction and within the definition of a public nuisance. Davis v. Mayor, etc., of N. Y., 14 N. Y. 506–524, 67 Am. Dec. 186; Hume v. Mayor, 74 N. Y. 264–270; Landau v. City of N. Y., 108 N. Y. 48, 72 N. E. 631, 105 Am. St. Rep. 709.

The rule, which has ever since been adhered to, was thus succinctly announced by Chief Justice Denio in Davis v. Mayor, 14 N. Y., at page 524, 67 Am. Dec. 186:

"Any permanent or habitual obstruction in a public street or highway is an indictable nuisance, although there be room enough left for carriages to pass, and it is not less so though the thing which constitutes the obstruction is not fixed to the ground, but is capable of being and actually is removed from place to place in the street."

And the municipality whose agents license or acquiesce in the appropriation of the street or highway for an unlawful use, or in putting an obstruction therein amounting to a nuisance, or fails, after notice of such obstruction, to remove the same, is responsible in damages to a traveler injured in consequence of such appropriation of the street. Cohen et al. v. Mayor, 113 N. Y. 532, 21 N. E. 700, 4 L. R. A. 406, 10 Am. St. Rep. 506; Wells v. City of Brooklyn, 9 App. Div. 61, 41 N. Y. Supp. 143; Rehberg v. Mayor, 91 N. Y. 137, 43 Am. Rep. 657. In Cohen v. Mayor, supra, the evidence showed that a grocery wagon was standing in front of a store on a street in the city of New York. The thills were held in an upright position by a string, and the wagon had remained in this place and in this condition for several months when not in use by its owner. The street was narrow, and an ice wagon passing along it collided with the grocer's wagon, causing the thills to drop and strike the plaintiff, who was on the sidewalk in front of the store. The plaintiff sued the city, charging it with maintaining an unlawful obstruction in the street. The municipal authorities had given a permit to the owner of the wagon to leave it in the street with the thills tied up, receiving therefor $2. The Trial Court directed a verdict for the defendant, which was affirmed by the General Term, but reversed by the Court of Appeals. The court said:

"The storing of the wagon in the highway was a nuisance. The primary use of a highway is for the purpose of permitting the passing and repassing of the public, and it is entitled to the unobstructed and uninterrupted use of the entire width of the highway for that purpose. * * * It is no answer to the charge of nuisance that, even with the obstruction in the highway,

there is still room for two or more wagons to pass, nor that the obstruction itself is not a fixture. If it be permanently, or even habitually in the highway, it is a nuisance. The highway may be a convenient place for the owner of carriages to keep them in, but the law, looking to the convenience of the greater number, prohibits any such use of the public streets."

And the city was held liable because it had "assumed to authorize the erection and continuance of a public nuisance."

I realize that these cases are not identical with the one we are considering. We cite them for the purpose of showing the prevailing trend of the courts in holding that the street to its full extent is for the public, that any obstruction impeding travel or endangering the safety of the traveler is a nuisance, and that the city permitting such obstruction is chargeable with maintaining a public nuisance. But Wells v. City of Brooklyn, supra, is an authority more akin to the present one. The obstruction in the street there involved was a show case close to the curb line, and which for years had been fastened by a brace to an awning. A truck ran against the case, severing it from the brace. The next day the case was blown upon the plaintiff, who was upon the sidewalk, seriously injuring her, and she sued the municipality. The Trial Court in charging the jury said the city was not liable unless the officials of the city ought reasonably to have anticipated that the show case was likely to be overturned by a passing vehicle, and thus become dangerous, and the jury rendered a verdict for the defendant, and the judgment was reversed on appeal on the ground that this instruction was erroneous. The court held that the show case, when fastened to the awning, "was an unlawful obstruction in the street, which it was the duty of the defendant to remove. It was permanent in character and continuously maintained, and, being wholly unauthorized, it constituted a public nuisance." The court distinctly repudiated the rule adopted by the trial judge, already mentioned, and added:

"Time enough had not elapsed between the collision which loosened the show case and the injury to the plaintiff to impute notice to the municipal authorities that it was no longer secured. It is plain, therefore, if the city is liable at all, that its liability arises out of the fact that it permitted the existence of an obstruction in the highway amounting to a nuisance, which, by reason of the act of another person lawfully using the highway, was rendered dangerous to the plaintiff, and inflicted upon her the injuries of which she complains. * * * When a municipality tolerates for years the continuance of an unlawful obstruction in a public street which it is in duty bound to remove therefrom, its action is distinctly wrongful. It must bear the natural consequences of that wrongful action. Any unlawful obstruction in a public highway may prove dangerous to travelers, either from the manner in which it is originally erected or by reason of accidental or other interference with it by strangers to its erection. Notice to the municipality, therefore, of its presence, is notice that the safety of public travel is endangered or liable to be endangered. If, under such circumstances, the obstruction is allowed to remain, the municipality takes the risk."

An appeal was taken to the Court of Appeals, but the appeal was dismissed on the ground that the form of the order did not enable that court to review it. La Flamme v. City of Albany, 158 N. Y. 699, 53 N. E. 1127. Upon a retrial the court directed a verdict for the plaintiff, except as to the amount of damages, which were assessed

by the jury at $10,000, and the judgment was affirmed by the Appellate Division. Wells v. City of New York, 45 App. Div. 623, 60 N. Y. Supp. 802. See, also, Leary v. City of Yonkers, 95 App. Div. 126–130, 88 N. Y. Supp. 829. The peanut roaster had been in the street from May 2d to August 16th, the day of the accident. It was in a conspicuous part of the village, readily visible to every passer-by, and its presence during all that time was known to the trustees and the village officials. It was far more of an obstruction and fraught with greater tendency to do injury to people upon the sidewalk than the show case fastened to the awning. The liability of an explosion from an engine and boiler forming a part of a portable machine is always present and may be anticipated at any time. It was an unusual coincidence of events that tore the show case from its moorings, and subsequently, by the action of the wind, threw it upon the plaintiff, and which constituted the liability in the Wells Case. But in each case the thing in the street was in and of itself a nuisance, and for that reason the municipality was responsible for the injuries inflicted by it.

It does not seem to me that Hunt v. Mayor, 109 N. Y. 134, 16 N. E. 320, discussed in one of the prevailing opinions, is decisive of this case. A steam-heating company, pursuant to legislative authority and the ordinance of the common council, had laid mains and pipes under the streets for the transmission of water and steam. A gas main was already in the street, and the two lines crossed at the junction of two streets, where a manhole was made by the heating and power company of bricks and cement with two iron covers. When the steam was let in the pipes, the ground became very warm, and the lead in the gas pipes softened, causing them to leak. An explosion occurred at the manhole, and the plaintiff, who was passing along the street, was injured. The explosion apparently occurred from the accumulation of illuminating gas in the manhole, which, in some way, became ignited. The heating company was authorized to use the streets, but it was claimed the city should have determined the manner in which the mains should be laid and placed with reference to the gas line. There was no proof that they were laid or located improperly, or that they could have been placed in any different way from the plan adopted, "or that a manhole was not a proper arrangement, or that there was any lack of care in conducting the work." The project was a new one, and the accident which occurred, the court said, could not have been apprehended. The municipality was charged with negligence, but the proof did not substantiate the charge. It affirmatively established the contrary. The court added:

"So far as appears, all the precautions which at the time seemed to be necessary were taken to make the work safe and secure."

Even if the trustees of the defendant did not know the machine was dangerous, they should have removed it for it was an obstruction upon the street. As was said in Rehberg v. Mayor, 91 N. Y. 137, at page 144:

"If the city omitted to act with reasonable diligence after notice of an unlawful obstruction in the street, which might occasion injury to persons lawfully therein, we think it would be no defense that it may not have known that the obstruction was in fact dangerous. The duty rested upon the city

to remove the incumbrance; and, if the incumbrance was dangerous in fact
and resulted in injury to the plaintiff, the city is, we think, responsible, al-
though it had not by actual examination and inspection ascertained its dan-
gerous character."

Several of the cases charging municipalities with responsibility for
damages incurred by reason of obstructions in the street arose where
the authorities by some affirmative act had licensed or permitted the
obstruction, notably in Cohen v. Mayor of N. Y., 113 N. Y. 523, 21
N. E. 700, 4 L. R. A. 406, 10 Am. St. Rep. 506, and Landau v. N.
Y., 180 N. Y. 48, 72 N. E. 631, 105 Am. St. Rep. 709, and the counsel
for the appellant endeavors to make that fact potential in distinguishing
them from the present case. He correctly states that the trustees of
the defendant never granted the privilege to Coloross to place his en-
gine and boiler in the street. The streets of a village "are under the
exclusive control and supervision of the board of trustees" (section 41
of the village law [Laws 1897, p. 414, c. 414; Laws 1870, p. 694, c.
291, tit. 7, § 1]; Nelson v. Village of Canisteo, 100 N. Y. 89, 2
N. E. 473), and they are charged with the affirmative duty of keeping
them reasonably safe. Pettingill v. City of Yonkers, 116 N. Y. 558,
22 N. E. 1095, 15 Am. St. Rep. 442; Leary v. City of Yonkers, 95
App. Div. 126–129, 88 N. Y. Supp. 829. This is no negative burden.
If so, the municipal authorities by shirking their duties by inaction
might always shelter the municipality from responsibility. If that rule
were to obtain, shiftless inert trustees would be preferable to the vigi-
lant and capable. The principle adhered to by the counsel prevails
where the municipal authorities in their discretion have not passed
an ordinance relative to the use of the streets, as in Howard v. City of
Brooklyn, 30 App. Div. 212, 51 N. Y. Supp. 1058, or have not invaded
the premises of an individual to abate a nuisance, as in Leonard v.
Hornellsville, 41 App. Div. 106, 58 N. Y. Supp. 266. The enactment
of an ordinance pertains to the legislative function of the trustees re-
quiring discretion, and the erroneous exercise of judgment or the
omission to exercise it at all in that regard may not cast legal blame
upon the municipality if damages accrue.

But where there is an obvious persistent encroachment upon the street
which is a public nuisance per se, either impeding the use of the
street to some extent or imperiling the travelers upon it, the trustees
may not ignore it, and by failing to act at all shield the municipality
from responsibility. As was said in Ehrgott v. Mayor, etc., of City
of N. Y., 96 N. Y., at page 273, 48 Am. Rep. 622:

"The city must act through officers and agents, and it is for the Legislature
to determine what powers and duties shall be devolved upon them. It matters
not how ample or exclusive their powers may be, nor how independently they
may act, nor how they are chosen. If they are provided by law, and author-
ized to discharge a corporate duty which rests upon the municipality, then
in the discharge of that duty they represent the municipality, and it may be
chargeable with their misfeasance and nonfeasance."

The removal of a nuisance in a street is a ministerial act, instead of
the kind denominated as governmental. If a threshing machine in full
blast is kept running for a week on Main street in the city of Rochester,
or is stored there night after night, and a traveler is injured by col-

liding with it at night, or by reason of his team running away through fright, the city cannot avoid liability on the ground that no duty was imposed upon its officials to remove it. They would not be expected to grope through the provisions of the city charter to ascertain whether it contained a section permitting the removal of the nuisance, nor would they be called upon to enact an ordinance before getting rid of the illegal obstruction. The trustees had no authority to grant a license to Coloross to place this peanut roaster in the street. They would not be expected to transcend their authority. If they knew of it and acquiesced in it, and failed to remove it, the village is liable. To hold that the municipality is not responsible because the trustees did not by ordinance or license give Coloross permission to cumber the street unlawfully with this machine, but did tolerate and assent to it, is too narrow a rule of liability for a municipality. That doctrine would invite laxity in the improper use of the streets. The court, as in the Wells Case, determined as matter of law that the peanut roaster in the street was a nuisance, and that the defendant was liable in permitting it to remain there. Ordinarily the jury are permitted to decide those questions; but the evidence, without dispute, showed that this machine was in the main street in daily operation for more than three months. Its general character was apparent. The most casual observer would notice that it contained an engine and boiler. The president and the trustees of the village and its street commissioner knew of its location and operation. Manifestly it was an illegal obstruction. Whether the trustees had reason to foresee that it would explode or that it was "inherently dangerous" was unimportant if the thing was a nuisance. Three months' knowledge of its use assuredly was adequate to give the trustees ample opportunity to comprehend the character of the obstruction and to cause its withdrawal from the street.

The injuries to the plaintiff were within the rule of proximate cause. Cohen v. Mayor, 113 N. Y. 532, 21 N. E. 700, 4 L. R. A. 406, 10 Am. St. Rep. 506; Murphy v. Leggett, 164 N. Y. 121–126, 58 N. E. 42; Wells v. Brooklyn, 9 A. D. 62, 41 N. Y. Supp. 143. The machine, the nuisance, in its ordinary operation exploded and did the injuries. A person was required to supply the water and gasoline and to keep the machine going, but his act in either furnishing these supplies or in omitting to furnish them properly is not the intervening cause which relieves the defendant. The defendant endeavored to show that similar machines had been in use in other villages and cities; but the evidence was excluded. We think the ruling correct. Possibly, if the charge were negligence, that class of proof might be competent, but where the municipality is maintaining a nuisance the fact that other villages are committing the like offense is no defense. Am. & Eng. Encyc. of Law (2d Ed.) vol. 21, p. 690.

The judgment and order should be affirmed, with costs.

WILLIAMS, J., concurs.