In the Matter of Laying Out, Opening and Extending of ALEXANDER STREET, from Ashburton Avenue to the South Line of Wells Avenue, in the City of Yonkers.

ELIJAH M. YERKES and Others, Appellants; WILLIAM F. HARRIGAN, Respondent.

Second Department, June 2, 1911.

Municipal corporations — nuisance — eminent domain — street opening — award — erroneous theory — right of owner to maintain overhead coal conveyer.

The common council of a city cannot authorize the maintenance of a nuisance.

An order appointing commissioners of estimate and assessment in proceedings to condemn land for highway purposes gives them no power to determine whether or no certain structures on the land taken are a public nuisance.

Where commissioners of estimate and assessment in proceedings to condemn land for a public street, in making their awards for the land taken, proceed upon the theory that the owner will have a right to maintain an existing overhead coal conveyer across the proposed street at its present height, their report should not be confirmed.

The owner should be compensated for the destruction of all the structures on the land condemned.

WOODWARD, J., dissented, with opinion.

APPEAL by Elijah M. Yerkes and others from an order of the Supreme Court, made at the Westchester Special Term and entered in the office of the clerk of the county of Westchester on the 10th day of January, 1911, refusing to confirm the report of commissioners of estimate and assessment as to parcel No. 5 and directing a rehearing as to said parcel, and also from an intermediate order entered in said clerk's office on the 10th

Second Department, June, 1911.          [Vol. 145.

day of June, 1910, permitting certain owners to file amended objections to the report of the commissioners.

*Ralph Earl Prime, Jr.*, for the appellants.

*John F. Brennan*, for the respondent.

BURR, J.:

If any authority exists to permit the maintenance of a structure like the coal carrier described in the evidence in these proceedings across Alexander street, it rests in the common council of the city of Yonkers. (Laws of 1908, chap. 452, art. 3, § 1.) Even the common council could not authorize the maintenance of a structure which was a nuisance. (*City of New York* v. *Knickerbocker Trust Co.*, 52 Misc. Rep. 222; affd., 121 App. Div. 740.) The order appointing the commissioners confers upon them no jurisdiction to determine whether this structure is a nuisance or not. That may be a question of fact which can only be determined when the proper parties are before the court in an action brought for that purpose. The possible consequences of a rule of law such as is suggested in the opinion of Mr. Justice WOODWARD seems to me to be sufficient to condemn it as unsound. Under that rule, if the property owner had a factory building 100 feet long and five stories high, directly at right angles to the line of the proposed street, it would be within the power of commissioners of estimate to determine that a tunnel the width of the street and of a height equivalent to two stories of the building, would be sufficient for street purposes, and they might by their decision give legal sanction to the maintenance of the remaining three stories above the line of the street. They would in effect do that when they provided that the property owner should be compensated not for the destruction of the whole of that portion of the building within the line of the street, but only for such part of it as they determine should be actually removed. We do not think that there is any serious question as to the sufficiency of the original objections to the award of the commissioners. Their report indicated the theory upon which they had proceeded. The objection clearly pointed out that this theory was erroneous. The fact that in that connection reference was made to the specific sums allowed for

protecting the conveyer and for moving the scales would not detract from the scope of the objection. The most that could be claimed would be that while the propriety of the theory adopted by the commissioners was attacked, an improper reason or not all of the reasons were stated for the grounds of such attack. No amendment of the objection was really necessary. It is also true that in the testimony offered by the property owner, in the first instance, he stated as the extent of his damage, based upon the value of the entire parcel before and after the taking, the sum of $8,200. It is quite clear that in this testimony he was referring only to the value of the land, for in his subsequent testimony he stated in detail the consequences of removing the conveyer and the trestle supporting the same, and introduced evidence as to the expense of the necessary change, all of which was received without objection.

The orders appealed from should be affirmed, with ten dollars costs and disbursements.

JENKS, P. J., THOMAS and CARR, JJ., concurred; WOODWARD, J., read for reversal.

WOODWARD, J. (dissenting):

The city of Yonkers instituted a special proceeding to take certain premises for the purpose of extending a street known as Alexander street, under the provisions of chapter 452 of the Laws of 1908. The report of the commissioners of estimate has been confirmed except as to parcel No. 5, owned by the respondents, William F. Harrigan and wife. As to this parcel the court has permitted the respondents to twice amend their objections, and has finally refused to confirm the report, sending it back to the commissioners for further action. In the view which I take of this case, it is not necessary to enter into the consideration of the question whether the court should have permitted the respondents the opportunity to amend their objections, for I am of the opinion that the court erred in setting aside the report in whatever manner the respondents offered their objections.

Parcel No. 5 is a strip of land fifty feet wide, extending north and south through the center of certain premises owned by the

respondents, and the award made for the lands actually taken
are the figures given by the respondent Harrigan, as to which
the latter made no complaint originally. Indeed, it is not now
questioned that the allowance of $8,216 is the full and proper
value of the lands actually taken, but it is urged that the allow-
ance of $600 for the incidental damages to the remaining prop-
erty is inadequate, and that is the real question presented upon
this appeal. The premises in question front upon navigable
waters on the west, and for many years there has been a pri-
vate roadway occupying the land known as parcel No. 5, and
to the east of this private roadway is a coal pocket. The
respondent is a coal dealer, and he has been accustomed to
receive his coal at the dock on the westerly end of the premises,
elevating it about thirty-four feet and placing it in cars which
crossed the private roadway at the elevation mentioned, and
dumping it from such cars into the coal pocket, from whence
it was delivered into the wagons for distribution about the
city of Yonkers. The commissioners in making their report
say that in making the award for damages by taking of parcel
No. 5 to the remaining property of Mr. and Mrs. Harrigan,
" we have made such award on the theory that after the taking
of the said parcel for the purpose of a street in this proceeding
Mr. and Mrs. Harrigan will have the right to maintain the
overhead coal conveyor now crossing said parcel No. 5 from
the westerly to the easterly sides thereof at the same height
at which it is now maintained, providing, however, that the
said conveyor shall be protected beneath and at the sides
thereof so as to prevent any material falling therefrom upon
the street below as such protection is set forth in the testimony
herein, and providing also that the support for the said
trestle which encroaches upon the proposed street at the
westerly sides thereof is removed west of the west side of
the proposed street and for the cost of so protecting said
overhead conveyor and removing the said supports to the said
trestle we have made awards as will appear from paragraph 8
of this report."

This report has been set aside upon the theory that the com-
missioners erred in the law, in that "it cannot be held or
determined that such public use in the future may not be

inconsistent with the maintenance of any such overhead structure by the owner of the remaining parts of the general tract," to quote from the opinion of the learned court at Special Term, who relies upon *Knox* v. *Mayor, etc.* (55 Barb. 404, 415, 416), and other authorities, including *Leary* v. *City of Yonkers* (95 App. Div. 126) as authority. I am of the opinion that the learned court has misapprehended the force of these authorities as applied to the facts as presented by this record. We are not dealing with the right of the municipality to permit of encroachments upon the public streets as against abutting property owners, as was the case in *Knox* v. *Mayor, etc.* (*supra*), but with the question of what the city of Yonkers has attempted to take from the respondent. The compensation to be paid for property taken under the power of eminent domain depends upon the property actually taken within the contemplation of the law as it has been many times judicially defined, and not upon the powers of the municipality in dealing with the property after it is taken. In the case now before us the city of Yonkers has undertaken to condemn, not for public purposes generally, but for street purposes, parcel No. 5, in connection with other parcels. There is a trestle or bridge across this parcel No. 5 at an elevation of thirty-four feet, and there is absolutely not a word in the ordinance providing for this taking, or in any of the proceedings, which evidences any intention whatever of taking this bridge or trestle for street purposes, or for any other purpose. The trestle spans this parcel at an elevation which does not interfere in any manner with any street purpose known to the law at the present time. No definition of a street purpose, as such a purpose is defined by the decisions of this State, can be found which requires the taking of this bridge or trestle from the respondent. It is erected upon his own land, and with the exception of an incidental encroachment, upon land which is not to be taken in this proceeding. It is erected at an elevation which does not interfere with any possible street use known to the law of this State to-day, and there is no more power in the statute under which this proceeding was instituted to take this trestle than there is for taking the coal pocket on the easterly end of the premises, for the only authority is to

take for street purposes, and when all has been taken which is necessary for street purposes as they are now known to the law, the limit of the authority has been reached. The statute provides (Laws of 1908, chap. 452, art. 6, § 2) that no ordinance directing the laying out, opening, extending, widening, altering, straightening, narrowing or discontinuing of any public street shall be considered until certain preliminaries have been taken, and then the "common council must cause a map or plan of the proposed improvement to be made," etc., and this record will be searched in vain for any map or plan which indicates in any manner that any trestle is to be taken for street purposes or for any other purpose, and unless the mere taking of an easement for street purposes includes the taking of everything above the surface of the street, no matter at what elevation it may be found, there has been no effort on the part of the city of Yonkers to take anything from the utility of the respondent's contrivance for handling his coal. It is fundamental in condemnation proceedings that the property to be taken shall be pointed out; that the party whose property is taken shall have notice of just what is to be included in the taking. This is necessary to that due process of law which is required before any one can be deprived of property, and it seems to us entirely clear that in the proceeding now under review the city of Yonkers cannot take the respondent's trestle, for the reason that it does not in any manner obstruct the proposed street for street purposes, and is not, therefore, included in the description of the premises. As pointed out by Haight, J., in *Palmer* v. *Larchmont Electric Co.* (158 N. Y. 231, 235), there is a broad distinction between a municipal and a street purpose. "The primary object of highways is for the public travel by persons and animals, and by carriages or vehicles used for the transportation of persons and goods, other than by railroads. Sewers drain the surface water from the highways, and thus relieve them from impairment and destruction. In this respect sewers are for a street purpose. In addition, they may drain also the abutting property and houses and thus tend to promote the public health. In this respect they are for a municipal purpose. Water supplied by mains through the highways may be used for clean-

ing and sprinkling the streets. In this respect it is for a street purpose. It may be used by the abutting owners for cleansing and for domestic purposes, and is also used for the extinguishment of fires. In this respect it is for a municipal purpose." Recognizing this distinction, and keeping in mind that the object sought in the present proceeding is the extension of a street under the provisions of article 6 of chapter 452 of the Laws of 1908, it will be seen that the description given of the property to be taken does not include, by necessary implication, the trestle of the respondent, which does not, with the trifling exception which is to be remedied by the removal of one of the supports, encroach upon the proposed street in so far as any street purpose is concerned. The question here under consideration is entirely apart from the question of liability for the method of maintaining and operating this trestle; the only question here is whether the trestle, in and of itself, is necessarily involved in the taking of an easement for street purposes as that term is understood in law. If it is not, then it is not included in the premises described in this proceeding, and it would be error to permit of an award for the damages which would result to the respondents if the same were to be taken. The primary or fundamental idea of a highway is that it is a place for uninterrupted passage by men, animals or vehicles, and a place by which to afford light, air and access to the property of abutting owners, who in this respect enjoy a greater interest in the street than the general public, even though their title to the land stops with the exterior line of the street. (*Matter of Rapid Transit R. R. Comrs.*, 197 N. Y. 81, 98, and authority there cited.) In the case now before us the respondents are the abutting owners. The adjacent property owners are parties to this proceeding and are asking for its confirmation, so that the questions involved in relation to light, air and access are not involved. The respondents maintain this trestle for their own convenience, and may, at any time, discontinue the same. We are called upon, then, only to consider the fundamental idea of a highway as a "place for uninterrupted passage by men, animals or vehicles" (*Eels* v. *A. T. & T. Co.*, 143 N. Y. 133, 140), and it would be difficult to suggest a condition under which this free passage

would be denied to any one under the facts as they appear
in this record. The trestle is concededly thirty-four feet above
the street as it has been used as a private way for many
years. There is no presumption, and no fact appearing, that
this grade of the street will be materially changed at any
time, and this court may well take judicial notice of the fact
that no man or vehicle known to the usages of this day, requires
an overhead clearance of thirty-four feet. It might be sug-
gested that an elevated railroad might in time be superimposed
upon this street, and that this might require the removal of
this trestle, but the complete answer to this is that a railroad,
either surface, underground or elevated, is not a street purpose.
A use made of a highway which does not help it as a highway
" for uninterrupted passage by men, animals or vehicles," is
not a street use, but is foreign to the purpose for which the
street was created. Such a use was not within the contempla-
tion of the original owner of the land when he parted with the
title thereto for a street, or gave perpetual right of way over
the same for the purpose of a street. (*Matter of Rapid Tran-
sit R. R. Comrs., supra,* 99.) We all know that in cities and
throughout the State there are hundreds of streets and high-
ways which are crossed by railroads, with overhead clearances
from twelve to fifty feet, and I believe there is no case on record
in which it has been held that a person having no other interest
than that of a traveler upon the highway has been aggrieved
by reason of such overhead crossings; that these interfered
with the " uninterrupted passage by men, animals or vehicles."
If this trestle was an ornamental archway, having artistic
merit, offering only the same obstruction which is now offered,
who would pretend to say that it interfered with any right of
the public in this highway? Does the mere fact that it is there
for a practical, as distinguished from an artistic, use, make any
difference with the question of law? Is it any more of an
obstruction to the " uninterrupted passage by men, animals
or vehicles," because it is designed to convey coal by means
of a private railroad, than it would be if used by a steam
railroad for general purposes? It is true, of course, that a rail-
road is not permitted to cross the streets of a city without the
consent of the local authorities, but that is merely a limitation

upon its corporate powers, and does not, by any means, tend to establish that a private railroad may not be constructed upon the surface of the ground, or beneath the surface or above the surface, so long as it does not interfere with the "uninterrupted passage by men, animals or vehicles," and examples of this are to be found in nearly every city in the country, where abutting owners are permitted to make use of their rights as owners of the fee, subject to the right of the public to a free and unobstructed passage in the manner commonly in vogue for public travel upon the highways of the State. It should be remembered that in the case now under consideration there is no provision for taking the fee of the land for street purposes; the statute clearly contemplates the mere taking of an easement for the "uninterrupted passage by men, animals or vehicles," and all of this is clearly accomplished when there is a free passageway fifty feet in width and thirty-four feet in height, and while it is no doubt true that the respondents might so operate this trestle as to constitute a public nuisance, that is a matter going to the method of operation and not to the maintenance of the structure itself. The case of *Leary* v. *City of Yonkers* (95 App. Div. 126), in which Mr. Justice WILLARD BARTLETT quotes from the language of the court in *Grove* v. *City of Fort Wayne* (45 Ind. 429) to the effect that "The power of a city over her streets, and the right of the public to them, extends upwards indefinitely, for the purposes of their preservation, safe use, and enjoyment," and that "the duty of a city in this respect is commensurate with her power," is authority only for the proposition that a city might be held liable for negligence if it had notice of a dangerous condition existing in respect to a sign overhanging the street, even though the sign was not supported by any structure extending into the highway, although the decision in that case held that the evidence did not support the judgment in favor of the plaintiff, so that the question was not necessarily determined. Assuming, however, that the municipality would be chargeable for negligence in connection with the operation of this trestle, that does not change the situation; it does not make it necessary for any street purpose that the trestle should be taken in the present proceeding. If the trestle is operated in a manner to endanger

persons lawfully using the highway, such operation would constitute a nuisance, just as it would constitute a nuisance if a coal chute entirely upon the respondents' premises was so operated as to throw coals down into the highway, and this could, of course, be abated. Highways must be maintained even though the municipality has to run the chances of its own negligence, though it seems to me doubtful whether there would be any liability on the part of the municipality for the negligence of the respondents in the maintenance of this structure.

One thing is very certain, the case of *Knox* v. *Mayor, etc.* (55 Barb. 404) is not an authority for holding that the trestle here under consideration would constitute a nuisance in the street. Mr. Knox was lessee for a term of years of the property at the corner of Broadway and Fulton street and erected a store building. Owing to the congestion of traffic at this point the city authorities erected a bridge over Broadway for persons on foot, one of the landings of such footbridge being in front of the plaintiff's store. This landing occupied about one-half of the sidewalk, thirteen feet in width, and obstructed the light so that the plaintiff was forced to burn his gas during the day time, while his tenants on the floors above were leaving and the people were crowded so that they went in through his store to reach Fulton street. The evidence showed that the public did not use this footbridge for any practicable purpose; that it was largely occupied by persons who watched the traffic as a mere matter of curiosity, and it was held that, as the structure did not tend to increase the utility of the easement held by the public, and did interfere with the rights of the plaintiff, it was such a public nuisance, peculiarly affecting the plaintiff's rights, as to give him an equitable cause of action against the city for the abatement of the same. There the structure did interfere with public travel; it diverted it and caused it to seek the other side of the thoroughfare, or to intrude it upon the plaintiff; it took up practically one-half of the sidewalk at the intersection of two of the most important thoroughfares of the city, where every inch of the space was important to the public. It was entirely constructed within the street lines of Broadway, and was obviously an obstruction, accomplishing no practicable purpose of

the highway, and the court properly held that this constituted a nuisance. If Mr. Knox had owned both sides of Broadway and had himself constructed a walk thirty-four feet above the street for the purpose of accommodating such of his customers as desired to make use of it, a different question would have been presented, and one which would have borne some relation to the present case.

In the case now under consideration the city of Yonkers has sought to extend a street used in reaching the docks and railroads, following the lines of a private roadway which leads under the respondents' private railroad used in transferring coal from boats to the pocket described in the record, and to say that it is necessary to take this trestle, and to compensate the respondents for the same, where it does not in any way detract from the practical use of the highway, is going beyond that "just compensation" required by the Constitution (Art. 1, § 6), and is imposing an unnecessary and illegal burden upon the public, who must make this compensation. The city has not sought to take the property of the respondents in this trestle; it has merely attempted to take the right of way as it practically exists at the present time, paying the full value of the land taken, with just compensation for the damages resulting to the remainder of the property. There does not appear to be any damage to the remainder of the property for the purpose for which the respondents claim to desire its use, except such as may be involved in the improvement of the trestle to protect the persons using the highway and to remove a slight encroachment of one of the supports of the trestle, and the commissioners not having adopted any erroneous theory in dealing with the questions involved, it follows that their report should have been confirmed as a whole.

The orders appealed from should be reversed, with costs, and the report of the commissioners as to parcel No. 5 should be confirmed, with costs.

Orders affirmed, with ten dollars costs and disbursements.