In re LINCOLN AVE. IN CITY OF NEW YORK. (Supreme Court, Appellate Division, Second Department. April 16, 1915.) Appeal from Special Term, Kings County. In the matter of the application of the City of New York relative to acquiring title for opening a street. From an order setting aside an award to property owners by commissioners of estimate and assessment, the City appeals. Order reversed, and motion to confirm the report of the commissioners granted. Melville J. France, of Brooklyn (Howard L. Campion, of New York City, on the brief), for appellant. Ferdinand Pecora, of New York City, for respondents.

PER CURIAM. Order reversed, with $10 costs and disbursements, and motion to confirm the report of the commissioners of estimate and assessment granted. We think that the evidence clearly establishes the adoption of the correct theory by the commissioners as to consequential damages, and, if the amount awarded by them is open to criticism at all, it is that it is liberal rather than otherwise.

PUTNAM, J. (dissenting). The proposed opening of Lincoln avenue cuts through a large tract lying on Jamaica avenue, nearly opposite Cypress Hills Cemetery. It is used for manufacture of monuments. The value of the strip of intersecting land taken is not disputed. The issue is: 'How much is the resulting damage to the plant, which this 50-foot street divides into two isolated parts, one of which is thereby cut off from power? The obvious losses are not only that power is cut off, but in the means to carry back and forth the rough and worked blocks of granite in process of finishing, which now move along a diagonal tramway, used 15 or 20 times a day. The present power is by steam at the western end of the premises. It works a compressed air plant; also electric generators. An underground conduit takes the compressed air, beneath where the street now is to go, to the eastern yard. An overhead wire conducts the electric current across to operate an electric traveling crane. A tramway runs between the two yards to carry heavy blocks. The stone material first goes into the eastern yard, to the cutting plant. The crane then swings it on the platform car on the tramway, where it comes across to the westerly plant. Two electric derricks then deposit the blocks at the polishing machines. Afterwards it goes back to the eastern yard on storage, and for exhibition. In this way the plant is so unified that one boiler and engine supply all the power at a daily cost of $8. Such a plant cannot be operated as a unit after it has been sundered by a public street. The damage estimates, therefore, primarily are for the changes so as to give the easterly yard the needed power to be run independently; also to arrange a mode of interchange of material which can no longer be effected by this tramway. Mr. Adamson estimated the entire plant at $75,000 in its present condition. Other witnesses made it more. In order to give power to the eastern yard, he figured on a new engine house there, with boil-

er, engine, generator, compressor, and shafting connections, which items he detailed to make up $9,050. He proposed a truck, horses, and harness as a substitute for the tramway, by which to transfer the material, which he estimated at $2,550, making a total outlay, as a substitute for the present power, distribution, and track, of $11,600. Asked as to the damaged value of the plant, he subtracted this last figure from $75,000 and gave the remainder, $63,400, as his answer. But obviously this leaves a plant separated into two units, with duplicate cost of engineers, fuel, and other outlays, and (leaving out any increased cost of superintendence) would add to the yearly overhead charges over $3,000. When Adamson was recalled, he was asked to make this clear, namely, that $63,400 only represented the outlay to supply power in the part cut off, and for transferring the blocks. He attempted to capitalize the increased cost of operation, which perhaps he erroneously computed. The city's position, therefore, comes to this: The street as opened cuts off part of a united plant. To go on, two power plants must take the place of one. The award of $10,000 about represents the cost of the necessary structural changes. But two separate installations are obviously a wasteful duplication, compared with a plant that is intact. Hence an award of $10,000 either did not reckon these structural changes, or did not allow for the waste and loss of efficiency which the changes necessarily involved. Where an intervening street excludes an owner from the beneficial use of part of a manufacturing plant, he is entitled to the full resulting diminution of value, not only for the cost of installing new power, but to the extent that these changes have left the property damaged and impaired as compared with its condition before taking. Otherwise, the damages assessed are inadequate. Matter of Alexander Street, 145 App. Div. 495, 129 N. Y. Supp. 944. The discrepancy also in the assessments for benefits by which these respondents' lots are valued above those in the same block, and especially as compared with lots to the south of Wood street (the next street southerly and parallel with Jamaica avenue), seem to me to forbid confirmation. Hence I vote to affirm the order setting aside the report of the commissioners.