HANNAH COHEN et al., as Administrators, etc., Appellants, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent.

There is always reasonable ground for apprehending accidents from obstructions in a public highway, and any person who wrongfully places them there or aids in so doing, is responsible for accidents occurring by reason of their presence.

Where a municipal corporation, without the pretense of authority and in direct violation of a statute, assumes to grant to a private individual the right to obstruct one of its streets while in the transaction of his private business, and for such privilege takes compensation, it must be regarded as itself maintaining a nuisance so long as the obstruction is continued by reason of and under the license, and it is liable to damages naturally resulting therefrom to a third person.

M., a grocer, doing business in the city of New York, was in the habit of keeping his grocery wagon, when not in use, standing day and night in the street in front of his store under a permit to do so, granted to him by the city, for which an annual license fee was paid. When so standing the thills were raised perpendicularly and held up by strings. A passing ice wagon struck the grocery wagon and turned it partially around, the strings holding up the thills gave way and they came down upon the sidewalk striking plaintiff's intestate, who was passing thereon, causing his death. In an action to recover damages, *held*, that the license was issued without authority (§ 86, sub. 4, chap. 410, Laws of 1882); that the storing of the wagon in the highway was a public nuisance; that defendant by licensing it made itself liable for any damages resulting therefrom, the same as if it had itself maintained the nuisance; and that, as the accident happened because of the presence of the obstruction, it was the proximate cause of the injury.

*Cohen* v. *Mayor, etc.*, (43 Hun, 345) reversed.

(Argued April 18, 1889; decided June 4, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made January 22, 1887, which affirmed a judgment in favor of defendant, entered upon a verdict directed by the court.

This action was brought to recover damages for the death of Aschel Cohen, plaintiff's decedent, which occurred by reason of a wound in the head caused by the falling of a pair of thills, attached to a grocer's wagon, upon him while he was walking through one of the streets of the city of New York.

Evidence was given on the trial tending to prove the following facts: On the morning of October 20, 1879, said Cohen was walking through Attorney street in such city, and at the same time an ice wagon was passing south through that street, and a wagon loaded with coals was coming north through the same street. A grocery wagon without any horse attached was standing in front of the grocery store kept by one Marks, who owned the wagon. The thills were tied up in a perpendicular manner with some kind of string, and the length of the wagon was parallel with the length of the street. For some reason the driver of the ice wagon started up his horses, seemingly for the purpose of passing the grocery wagon before the driver of the coal wagon should reach it. The street was narrow and the ice man's wagon caught in some way against the wheel of the grocery wagon, and turned the wagon somewhat around, so that the thills came down on the sidewalk. At that time Cohen was passing and the iron on one of the thills struck him on the head and knocked him down, inflicting an injury upon him from the effect of which he died the same day. The string with which the thills were fastened was a thin, common string, and they had been tied up that way for several months, but whether with the identical string used on the occasion when the accident occurred the witness could not say. The wagon was used by its owner, the grocer, as the evidence tended to show, for the purpose of facilitating the transaction of his private business, and it was in no sense a public cart. When not in actual use the wagon was kept in the street in front of the owner's grocery store, day and night,

under a permit which was granted by defendant in consideration of the payment by the owner of two dollars therefor. No law or ordinance existed which gave jurisdiction to the defendant, through its Common Council, or through any of its officers, to license or permit such a use of the highway. Upon this evidence as to the manner in which the accident occurred, the court directed the jury to find a verdict for the defendant, and the plaintiff duly excepted to such direction. The direction was given by the court below on the ground that the cause of the injury was the defective manner in which the thills were tied, and there was no evidence of any notice to the city as to that fact.

*Francis B. Chedsey* for appellants. The storage of the wagon in the public street was unlawful and created a public nuisance notwithstanding the license issued by the city. (Laws of 1873, chap. 335, § 17, sub. 4; *People ex rel. O'Reilly* v. *Mayor, etc.,* 59 How. Pr. 277; *Ely* v. *Campbell,* Id. 333; *Cohen* v. *Mayor, etc.,* 33 id. 404; *Lavery* v. *Hannigan,* 52 Supr. Ct. 463.) The defendant having given the permit under which the wagon was stored in the public street, receiving compensation for its storage there, became a party with Marks to the unlawful act of keeping it in the street, and with him responsible for the injury caused by its being there, independent of any question of negligence in the manner in which it was kept or notice to the defendant of its dangerous condition. (*Irvine* v. *Wood,* 51 N. Y. 228; *Clifford* v. *Dam,* 81 id. 56; *Sexton* v. *Zett,* 44 id. 432; *Creed* v. *Hartman,* 29 id. 591; *Congreve* v. *Smith,* 18 id. 82; *Hume* v. *Mayor, etc.,* 47 id. 639; *Masterson* v. *Mt. Vernon,* 58 id. 391; *Kunz* v. *City of Troy,* 104 id. 344; *Rehberg* v. *Mayor, etc.,* 91 id. 137; *Goodfellow* v. *Mayor, etc.,* 100 id. 18.) The fact that the negligent act of a third person, for which the plaintiffs' intestate was not responsible, contributed or combined, to cause the accident, does not relieve the defendant from liability on account of it, provided the accident would not have happened but for the wrongful act or negligence of the defendant

(*Kennedy* v. *Mayor, etc.*, 73 N. Y. 365; *Macauley* v. *Mayor, etc.*, 67 id. 602; *Ring* v. *City of Cohoes*, 77 id. 83; *Kunz* v. *City of Troy*, 104 id. 344; *Merrit* v. *Fitzgibbons*, 102 id. 362.) If the obstruction in the street was unlawful, it cannot be claimed that the negligence of the driver of the ice cart was, as a matter of law, the proximate cause of the accident. The primary cause was the unlawful act of the defendant. Mere negligence on the part of the driver of the ice cart would not have necessarily defeated a claim by him for damages against the defendant had he been injured by the accident. (*Irvine* v. *Wood*, 51 N. Y. 224; *Clifford* v. *Dam*, 81 id. 52; *Creed* v. *Hartman*, 29 id. 591.) The death of the plaintiff's intestate, caused by the falling of the shafts of the wagon on him, demonstrates that the wagon was a dangerous obstruction on the street. (*Kunz* v. *City of Troy*, 104 N. Y. 348.)

*Thomas P. Wickes* for respondent. The acts of the defendants were too remote to be considered a legal cause of the death of the plaintiff's intestate. (*Ryan* v. *N. Y. C. R. R. Co.*, 35 N. Y. 210; *People* v. *Mayor, etc.*, 5 Lans. 524; 53 N. Y. 629; *Sharp* v. *Powell*, L. R., 7 C. P. 253; *Merrill* v. *Portland*, 4 Cliff. C. C. 138.)

PECKHAM, J. The storing of the wagon in the highway was a nuisance. The primary use of a highway is for the purpose of permitting the passing and repassing of the public, and it is entitled to the unobstructed and uninterrupted use of the entire width of the highway for that purpose, under temporary exceptions as to deposits for building purposes, and to load and unload wagons, and receive and take away property for or in the interest of the owner of the adjoining premises, which, it is not now necessary to more specifically enumerate. The extent of the right of such exceptional user was before us in the late case of *Callanan* v. *Gilman* (107 N. Y. 360), and nothing more need be said regarding it here.

It is no answer to the charge of nuisance that, even with the obstruction in the highway, there is still room for two or

more wagons to pass, nor that the obstruction itself is not a fixture. If it be permanently, or even habitually in the highway, it is a nuisance. The highway may be a convenient place for the owner of carriages to keep them in, but the law, looking to the convenience of the greater number, prohibits any such use of the public streets. The old cases said the king's highway is not to be used as a stable yard, and a party cannot eke out the inconvenience of his own premises by taking in the public highway. These general statements are familiar and borne out by the cases cited. (*King* v. *Russell*, 6 East, 427, decided in May, 1805; *Rex* v. *Cross*, 3 Camp. 224; *Rex* v. *Jones*, Id. 230; *People* v. *Cunningham*, 1 Denio, 524; *Davis* v. *Mayor, etc.*, 14 N. Y. 506, 524; *Callanan* v. *Gilman, supra.*)

Familiar as the law is on this subject, it is too frequently disregarded or lost sight of. Permits are granted by common councils of cities, or by other bodies, in which the power to grant them for some purposes is reposed, and they are granted for purposes in regard to which the body or board assuming to represent the city has no power whatever, and the permit confers no right upon the party who obtains it. As was said by Lord ELLENBOROUGH in the case of *Rex* v. *Jones* (*supra*), the law upon the subject is much neglected, and great advantages would arise from a strict, steady application of it. This case is a good example of its neglect. There is no well-founded claim of the existence of a power in the defendant to issue such a license. The defendant refers to sections 10 and 27 of chapter 27 of the ordinance of 1859. The former provides for an assignment by the mayor of a stand where the owner of a duly licensed public cart may let it remain waiting to be employed, and also a stand where it may remain at other times upon certain terms, etc. The latter section refers to a licensed cartman and provides for storing his cart in front of his premises under certain regulations. Neither section has anything to do with a case like this. The legislature has expressly enacted that the city shall have no power to authorize the placing or continuing of any encroachments or obstructions

upon any street or sidewalk, except the temporary occupation thereof during the erection or repair of a building on a lot opposite the highway. (Consolidation Act, § 86, subd. 4, pp. 25, 26; *People ex rel. O'Reilly* v. *Mayor, etc.,* 59 How. Pr. 277; *Ely, Mayor, etc.,* v. *Campbell, Comr., etc.,* Id. 333; *Lavery* v. *Hannigan,* 20 J. & S. 463.)

The owner of this wagon was not a cartman, nor was the wagon used as a public cart, but only as a means to enable the grocer to transact his own private business. He acquired no right by virtue of the license to store his wagon in the street, and in doing so he was clearly guilty of maintaining a public nuisance. The defendant was also guilty. It assumed to authorize the erection and continuance of a public nuisance. To be sure the legal power to grant the license to obstruct the street was, by the legislature, withheld from the defendant, yet, nevertheless, it did grant just such a permit and took compensation on account of it. In thus doing, the city became a partner in the erection and continuance of such nuisance. It was a nuisance, not by reason of the manner in which the thills were tied up, but because the wagon was stored in the street. It was not a mere negative attitude which the defendant adopted, such as would have been the case had it simply acquiesced in the manner in which the street was used. In this case it not only acquiesced in such use, but it actually encouraged it by making out and delivering a license to do it, and it received directly and immediately from the owner of the wagon a compensation for the erection and maintenance of a nuisance under the authority of such license. Under such circumstances the defendant must be held liable the same as if it had itself maintained the nuisance, for the owner of the wagon was nothing more than an agent through whom the defendant did this unlawful act. (*Irvine* v. *Wood,* 51 N.Y. 224.) But assuming that the city had no right to issue the permit, it is urged that such license did not authorize the negligence which caused Cohen's death, and that the act of the defendant was too remote to be regarded as the proximate cause of the

damage herein. We do not think so. The act of the defendant was wrongful, it consisted in setting up an obstruction in the public highway, and the accident happened because of the presence of the obstruction at the point in question. It was there by the act of the defendant, and being there it has caused the injury. To be sure it may be said that if the thills had not been negligently tied, they would not have fallen. But that was simply the way in which, by reason of the presence of the obstruction, the accident occurred. There is always reasonable ground for apprehending accidents from obstructions in a public highway, and any person who wrongfully places them there or aids in so doing, must be held responsible for such accidents as occur by reason of their presence. The obstruction in such case must be regarded, within the meaning of the law on the subject, as the proximate cause of the damage.

We think that in a case like this, where no obstruction would have existed but for the wrongful conduct of defendant, it must be held responsible for the damage which is caused by reason of the obstruction, even though it might not have happened if the licensee had been careful in regard to the manner in which he exercised the assumed right granted him by the license. The defendant, under these circumstances, must take the risk of such care, and not an innocent passer-by. This is not a case for the application of the doctrine that where the injury results from the negligent mode in which the licensee exercises the privilege granted to him, which mode is not part of the license, there must be proof of negligence showing permission to use, or acquiescence in the use of the mode after notice or knowledge on the part of the licensor. That may be the rule where the thing licensed is legal because of the license, and the illegality consists in the manner in which the license is carried out. The difficulty here does not alone consist in the negligent manner of fastening up the thills; but the license itself, the permission, with or without a consideration, to obstruct the street at all for any such purpose as was the case here, is the

wrongful act on the part of the defendant which renders it responsible for the damage naturally sustained from such obstruction.

We do not say that this principle of responsibility would render the city liable in every case of a mistaken exercise of power authorizing the use or occupancy of a public street by an individual. We confine ourselves to the decision of this case, and we simply say that when the city, without the pretense of authority, and in direct violation of a statute, assumes to grant to a private individual the right to obstruct the public highway while in the transaction of his private business, and for such privilege takes compensation, it must be regarded as itself maintaining a nuisance so long as the obstruction is continued by reason of and under such license, and it must be liable for all damages which may naturally result to a third party who is injured in his person or his property by reason or in consequence of the placing of such obstruction in the highway. This is none too severe a liability. It is to be hoped that its enforcement will tend to the discontinuance of a custom of granting permits or licenses to do what it is well known the city has no right to authorize or license. Such licenses, it is matter of public notoriety, are constantly granted without any semblance of legal authority, and the licensees are continually acting under them and obstructing the public streets to the serious inconvenience and danger of the public. When it is understood that such license has not only no effect in the way of legalizing an obstruction, but that it simply makes the city a partner in the maintenance of a public nuisance, and liable for the damage caused thereby, such knowledge may, perhaps, restrain the utterly illegal practice, and tend in some degree to the protection of the public in the lawful use of its own highways.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur, except Gray, J., dissenting on the ground that, assuming the city could not legally grant a license to Marks to keep his wagon in the street, that fact, in this case, was not

sufficient to charge the city with liability for the occurrence complained of. The proximate or immediate cause of the injury to the plaintiff's intestate was the negligent act of others.

Judgment reversed.