Matter of HOFELER, Relator, *v.* GEORGE S. BUCK, ROSS GRAVES, JOHN F. MALONE, FRANK C. PERKINS and ARTHUR W. KREINHEDER, Comprising the Council of the City of Buffalo; WILLIAM F. SCHWARTZ, as Commissioner of Streets of said City; and JAMES H. O'KEEFE et al., Respondents.

(Supreme Court, Erie Special Term, February, 1920.)

**Mandamus** — when taxpayer of city of Buffalo is entitled to a peremptory writ of, to compel removal of news stands — what is an encroachment and public nuisance — General City Law, § 20.

Neither section 20 of the General City Law nor the provisions of the charter of the city of Buffalo authorize a permanent or habitual obstruction of or incumbrance upon a public sidewalk in said city.

Misc.]    Supreme Court, February, 1920.

News stands on the sidewalks in said city at or near the curbs of the streets and a few feet from the curbs of the intersecting streets are encroachments and a public nuisance, and where the common council and the city officials not only permitted such encroachments for many years but refused to cause their removal, as required by the charter, the plaintiff in a taxpayer's action is entitled to a peremptory writ of mandamus to compel the city to remove the news stands.

APPLICATION by a taxpayer for a peremptory writ of mandamus.

Franklin R. Brown, for relator.

William S. Rann, corporation counsel, by Frank C. Westphal, for city officials.

Harold J. Adams, for James H. O'Keefe et al.

HINKLEY, J. Application by relator as taxpayer for a peremptory writ of mandamus to compel the council and street commissioner of the city of Buffalo to remove certain news stands, twenty-five in number, located at one or more of the corners of all but one of the intersecting streets which run into or cross Main street from Seneca to Chippewa, both inclusive. The other respondents are merchants or newspaper and magazine vendors of full age but popularly known as newsboys who occupy certain of the stands and came into this proceeding at their own request by order of the court.

These news stands are not attached to the sidewalk or street but they or others similarly situated have occupied substantially the same position for many years, some as long as eighteen years. These news stands, as the name would indicate, are used for the purpose of placing newspapers and magazines in large or small numbers for ready access by the merchants for delivery to individual vendees who pass along the sidewalk or street. They are of frame construction,

Supreme Court, February, 1920.     [Vol. 110.

except that some have an awning or top covering. They are approximately five or six feet high, two feet wide and five feet long; one being three and one-half feet wide, thirteen feet long and seven feet high. They are located on the sidewalk at or very near the curb of the street and a few feet from the curb of the intersecting street.

There is nothing in the determination of this application which is discretionary with the court. If any of the material allegations of fact in the petition are controverted by the answering affidavits this application must be denied or permission given to the relator to have an alternative writ issue. *Matter of Rexford Flats B. Co.* v. *Canal Board,* 168 App. Div. 558. If, on the other hand, pre-supposing that all the allegations of the petition and answering affidavits are true, there is still no question of fact material to the petition to be determined, then this court must grant or deny the peremptory writ.

This brings us, first, to a determination of whether a question of fact has been raised by the answering affidavits to any material, essential allegation of the petition. Briefly stated, there is no dispute that each of these stands occupies a space of approximately at least two feet by four feet of the surface of the sidewalk originally constructed at the expense of the taxpayers for use by pedestrians as a place for travel.

The claim of counsel for the respondents is:

*First.* That public convenience, in having ready access to its newspapers and magazines, has by long time usage and with the consent or permission of the council of the city of Buffalo, transformed the original purpose of these sidewalk spaces, namely, for travel, into allotments for private enterprise, rent and tax free. There is no dispute as to the fact of the original use of the sidewalk spaces for travel, nor is there any

dispute that they have been diverted by respondent news merchants for private enterprise and to suit the convenience of the traveling public. Nor is there any dispute but that if these news stands are removed then the sidewalk spaces which they now occupy will be again open for travel. If the contention of the respondents' counsel is tenable that they can be so diverted, then that is a matter of law and there is no disputed question of fact, and that question of law will be discussed later.

*Second.* The respondents further claim that these news stands are not obstructions and that the respondents have a right to a trial to determine whether or not they do obstruct or hinder the traveling public. On the contrary, the undisputed facts in this application, as shown by the affidavit of respondent Schwartz, are that these news stands occupy at all but one of the intersecting streets of the main thoroughfare of the city of Buffalo a width of at least two feet of a total width of sidewalk varying from twelve to twenty feet. These figures, when applied to the main and intersecting thoroughfares in the heart of a city the size of Buffalo, determine these structures to be obstructions or encroachments as matter of law. For greater emphasis let me say that there is no further assistance which a lay jury could give to the court to determine whether they interfere with the traveling public. The attention of the court has been called to no precedent which would make this claim a question of fact. In the case of *People ex rel. Pumpyansky* v. *Keating,* 168 N. Y. 390, cited by counsel for respondents, the news stand was constructed in accordance with the provisions of an ordinance of New York city under the stairs of the elevated railways. This stand was properly and lawfully placed by ordinance upon sidewalk space already appropriated for the elevated railway

Supreme Court, February, 1920.　　[Vol. 110.

stairs and the question turned upon the amount of the encroachment beyond the line of the stairs. The prevailing opinion of the Appellate Division states that this encroachment was not "more than about a foot." The opinion of Judge Bartlett in the Court of Appeals states that the allegation as to the incumbrance is very vague and that "it is apparent that *if there is any encroachment* upon that portion of the sidewalk it is very slight." In the case at bar the allegation is not vague but explicit; the measurements are exact; there is no claim that the stands are not there; there is no ordinance permitting their erection; the spaces occupied by the encroachments are sidewalk spaces allotted for pedestrians and never lawfully appropriated for any other purpose; and the encroachment is not slight but approximately at least two feet wide by four feet long. The news stands are encroachments and nuisances as matter of law and there is no disputed question of fact in the moving papers necessary to be determined in arriving at that conclusion.

*Third.* There is a certain indefiniteness as to the claim of the respondents concerning the alleged authority of the city to authorize these obstructions. No allegation is contained in the answering affidavits that there is any ordinance authorizing them. The allegation that the stands are upon the street by the consent or permission of the common council is not, nor is the denial of the conclusion of law that the news stands are unlawful obstructions, an allegation that they exist by virtue of an ordinance. There is no allegation in the answering affidavits as claimed in the respondents' brief, that the stands are in the street pursuant to proper authority and *ordinance.* Commissioner Kreinheder swears positively that these news stands have been in use on the streets of the city of Buffalo for a long time with the consent of the

council of the city of Buffalo or its predecessors. And respondent Schwartz, street commissioner, swears that the stands in question have been placed upon the streets aforesaid by permission or with the consent of the council of the city of Buffalo, or its predecessors, " as deponent is informed and believes." Although the allegations of the answering affidavits must be considered as true, it is doubtful if petitioner would be bound by such vague, indefinite conclusions by interested persons who are in a position to point out the true facts of the form of such alleged consent. It would seem, in other words, that such conclusions are tacked on to the end of answering affidavits solely for the purpose of raising a question of fact by their very indefiniteness. But to raise a question of fact in this issue by these statements we must presuppose that the common council had authority to consent to or permit these encroachments. As will be pointed out later, there is no such authority vested in the council to act, either by consent or permission.

For the above reasons it is the opinion of this court that there is no question of fact material to the petition to be determined and the duty devolves upon this court to grant or refuse a peremptory writ of mandamus.

In the laying out of every city certain parts thereof are set aside for the primary purpose of giving to the public at large free and unobstructed passage for travel. In *Matter of Rapid Transit R. R. Co.,* 197 N. Y. 99, the court said: "A use made of a street which does not help it as a highway ' for uninterrupted passage by men, animals and vehicles ' is not a street use, but is foreign to the purpose for which the street was created. Such a use was not within the contemplation of the original owner of the land when he parted with

Supreme Court, February, 1920.      [Vol. 110.

the title thereto for a street, or gave a perpetual right of way over the same for the purpose of a street.''

As a general rule, any obstruction of such street or encroachment thereon which interferes with such use is a public nuisance. *Callanan* v. *Gilman,* 107 N. Y. 365. There are only two classes of exceptions to this general rule, viz., *first,* those obstructions or encroachments that are temporary, and, *second,* those that are necessary and reasonable. These news stands then must be held a public nuisance unless they come within the exception of being only temporary, that is, not permanent or habitual, or that they are both necessary and reasonable. That they are not within the class of temporary obstructions or encroachments is conclusively shown by proof in the answering affidavits. These affidavits show that they or similar stands have occupied these or similar places for some as long as eighteen years, until they have grown, as the mayor states in his affidavit, to be places of business. That being so, then as business places they might actually but not lawfully be made the subject of bargain and sale. Certainly these stands are habitually upon the sidewalk, which deprives them of their temporary character, determines that they are nuisances, and places them subject to the same restrictions as permanent ones. *Cohen* v. *City of New York,* 113 N. Y. 532.

In determining whether or not these news stands are necessary and reasonable we must ever bear in mind that the streets were constructed and are maintained, not only for a public purpose, but for the purpose of public travel and transportation. Whenever an obstruction or encroachment, not temporary, has been permitted to remain upon a city street, it has been in furtherance of and incidental to the original purpose for which the street was constructed and

maintained. None has ever been permitted for the benefit of a private enterprise, except it served to aid the original purpose of travel. In the final analysis, the only claim of respondents that these news stands serve even a public convenience is that the vendor may have an extra supply on hand and be not compelled to pile his newspapers and magazines upon the wet or dirty sidewalk but can hand them clean to the customers. The claim of counsel for respondents that traffic would be interfered with if the customers were required to go up and down the street looking for a newsboy is unsound. For this application is not designed to affect the actual newsboy in any particular, nor even to remove the news merchant from the street, but only the news stands. And without the news stands the news merchant will still cling to his chosen corner because there come the greatest number of people. By the same token, at that corner is the most congestion and the necessities of travel and convenience of the traveling public require that at these points more than others the traveling space should be unobstructed and free from all unlawful encroachments. We are, therefore, asked to determine that these news stands are not nuisances because they serve the public convenience of giving to those who desire to purchase newspapers or magazines a dry, clean paper or magazine. To take from the taxpayer the right to use these sidewalk spaces constructed and maintained for travel, and most essential at these congested corners, in order to serve such a convenience, is a contention that needs no argument. These news stands are not temporary, necessary or reasonable, but are encroachments or incumbrances upon the public street and, therefore, nuisances as matter of law.

Section 20 of the General City Law and the provisions of the charter of the city of Buffalo, cited by

Supreme Court, February, 1920.          [Vol. 110.

counsel for respondents, are general provisions. They have never been and cannot be construed to authorize a permanent or habitual obstruction of or incumbrance upon a public sidewalk constructed and maintained by the taxpayers for the use of travel. Certainly not to further private enterprises to which they are not even necessary, but only convenient, nor to aid a public convenience which is not even reasonable nor in aid of public travel.

Under the commission charter of the city of Buffalo the common council is given power (§ 13, subd. 6) to prevent and abate nuisances. Also under the same section, subdivision 7, power is given the common council to prevent the encroachment upon, projections over, injury to, or the incumbering of streets, alleys, etc. By section 143 the city "shall remove all encroachments upon and projections over the public grounds, streets, alleys and wharves and abate all nuisances." This has the same effect as the enactment of the legislature in the New York City Consolidation Act, section 86, subdivision 4, pages 25, 26, that that city shall have no power to authorize the placing or continuing of any encroachments or obstructions upon any street or sidewalk except a specified temporary one. In the case of *Cohen* v. *Mayor of New York,* 113 N. Y. 532, a grocer claimed a right by virtue of a permit granted by the common council to store his wagon in a public street. At page 537 the court said: " The owner of this wagon was not a cartman, nor was the wagon used as a public cart, but only as a means to enable the grocer to transact his own private business. *He acquired no right by virtue of the license* to store his wagon in the street, and in doing so he was clearly guilty of maintaining a public nuisance." By analogy in the case at bar, whatever license or permit or consent the respondent city of Buffalo claims to

have given or the respondent news merchants claim to have received, verbally, in writing, or by long user, gave the latter no right to erect or maintain these news stands upon the public sidewalk and they are clearly guilty of maintaining a public nuisance. The case cited also disposes of two other claims of the counsel for the respondents when at page 535 the court said: (1) "It is no answer to the charge of nuisance that, even with the obstruction in the highway, there is still room for two or more wagons to pass, (2) nor that the obstruction itself is not a fixture."

The case of *Hoey* v. *Gilroy,* 129 N. Y. 132, cited by counsel for the respondents, has been explained and limited in the case of *City of New York* v. *Rice,* 198 N. Y. 124. At page 131 of the latter case the court said: " So, too, with respect to street awnings, which have been held to be within the power of the city authorities to authorize, the legislature has classified them with signs, horse troughs, telegraph posts and such like purposes, as legitimate street uses. (See Consolidation Act of 1882, chap. 410, sec. 86, and City Charters, in sec. 49 of act of 1897, and sec. 50 in act of 1901; *Hoey* v. *Gilroy,* 129 N. Y. 132.) They are, within common-law rules, encroachments and obstructions; but the most that could be said is that, if the legislature has stretched its power in delegating to the governing body of the municipality the right to authorize the erection of awnings, such an encroachment is of too unsubstantial a nature to be seriously considered as a public nuisance."

The case of the floating elevator in the canal, *People* v. *Horton,* 64 N. Y. 610, decided in 1876, was decided upon the proposition that because of its being moved from place to place it was only a slight interruption. The principle of this case has never been extended to

include permanent or habitual obstructions of a street or sidewalk.

In *Waldorf-Astoria Hotel Co.* v. *City of New York,* 212 N. Y. 97, cited by counsel for respondents, the hack stands were maintained by virtue of a duly adopted ordinance. This is further distinguished from the case at bar by the fact that the use of a hack is incidental to the purpose of a street which is primarily for travel. This also applies to the temporary parking of automobiles.

This is a taxpayer's action and it is elementary that any estoppel upon the part of the city because of its wrongful act could not deprive a taxpayer of his remedy against the city for such wrong done.

Considerable emphasis has been given in the affidavits and briefs to the fact that the respondent news merchants have, by their industry, established profitable businesses. Great credit must be given to them for developing that which was but a school boy's diversion thirty years ago into a well-organized business capable of supporting a whole family. On the other hand, we must not overlook the fact that their competitors in the little news and magazine stores have been handicapped by a constant raising of rent and almost overburdening taxes. In the meantime these respondent news merchants have struggled along, rent and tax free, upon property constructed, maintained and repaired by the increased rent or taxes heaped upon their competitors.

The relator Eugene D. Hofeler, as a taxpayer, has the right to a peremptory writ of mandamus to compel the city to remove the news stands particularly described in his petition. The action of the council and city officials in permitting these encroachments and refusing to cause their removal, as required by the charter, is wrongful. Such wrongful acts have

continued for many years with the professed knowledge of the city officials. This court, therefore, has no hesitation in requiring the city officials to perform their plain duty.

Writ of peremptory mandamus granted together with an aggregate of fifty dollars costs in favor of relator and against the five respondent members of the council of the city of Buffalo.

Ordered accordingly.