Argued at Pendleton October 31, modified November 22, rehearing denied December 20, 1927.

## STEPHEN A. LOWELL et al. *v.* THE PENDLETON AUTO COMPANY.

(261 Pac. 415.)

**Appeal and Error—Appellate Court Tries Appeal in Equity Suit De Novo.**

1. An appeal in an equity suit is tried in appellate court *de novo.*

**Appeal and Error—Where Evidence Properly Admitted in Equity Suit was Sufficient to Support Findings, Errors in Admission of Improper Evidence Need not be Considered.**

2. Where evidence in equity suit, which was properly admitted, was sufficient to support findings, errors in admission of improper evidence need not be considered.

**Parties—Joinder of Property Owners Similarly Situated in Suit to Enjoin Public Nuisance Held not Ground of Demurrer for Misjoinder of Parties—"Defect of Parties" (Or. L., § 68).**

3. In suit by property owners on same street to enjoin public nuisance on street, demurrer to complaint, based on misjoinder of

parties plaintiff under Section 68, Or. L., was properly overruled; demurrer for defect of parties being confined to nonjoinder of necessary plaintiff.

**Action—Property Owners, Seeking to Enjoin Public Nuisance on Their Street, Showing Individual Damages Only to Show Effect of Defendant's Acts, Held Properly Joined in Suit (Or. L., § 393).**

4. In suit by property owners on same street to enjoin public nuisance on street, property owners had common interest in subject matter of suit, and were properly joined under Section 393, Or. L., injury to plaintiffs and damages being alleged, not for purpose of recovery, but to show that defendant's acts affected plaintiffs in different manner than that of other members of community.

**Municipal Corporations—Abutting Owner on Street has Right of Access, Light, Air, View and to have Street Kept Open.**

5. Owner of abutting property sustains to street position different from that of anyone else, in that he has right of access, light, air and view, and right to have street kept open, among other rights.

**Municipal Corporations — Evidence in Abutting Owners' Suit to Enjoin Nuisance Created by Repair and Storing of Automobile on Street Held to Show Special Injuries.**

6. In action by owners of property abutting on street to enjoin defendant from maintaining public nuisance, caused by repair and storage of automobiles in street, evidence showed plaintiffs suffered injuries sufficiently peculiar and special to enable them to maintain suit for injunction.

**Municipal Corporations—Obstruction to Access of Street Creating Public Nuisance Need not be Continuous, but is Sufficient, if Occasional for Few Hours at Time.**

7. In suit by owners of property abutting on street to enjoin public nuisance, obstructing access to street, obstruction need not be continuous and complete, but is sufficient, if it is only occasional and extends for few hours at a time.

**Municipal Corporations—Abutting Owner's Rights in Street Extend to Area Near Lot Sufficient to Make Available to Him Full Enjoyment of Street.**

8. Rights of owner of lot abutting on street are concerned, not only with property immediately in front of his lot, but extend

---

5. See 13 **R. C. L.** 142.

6. Injunction against obstruction of highway on behalf of private citizen, see note in 52 **Am. Rep.** 574. See, also, 13 **R. C. L.** 231, 240; 20 **R. C. L.** 460. Suits by private citizens to enjoin nuisances, see notes in 1 **Ann. Cas.** 38; 17 **Ann. Cas.** 1128. See, also, 20 **R. C. L.** 460. Who may obtain injunction against public nuisance, see note in 67 **Am. Dec.** 203. Right of private individual to abate access to property, prevented or interfered with by obstruction in street, see note in 11 **Ann. Cas.** 287.

7. See 13 **R. C. L.** 220.

8. Obstruction upon any part of highway as nuisance, see note in 38 **Am. Rep.** 127. See, also, 13 **R. C. L.** 187.

to sufficient street area near by to make available to him full enjoyment of street.

**Municipal Corporations—Deposit of Vehicles on Street Gives No Greater Rights to Create Nuisance Affecting Abutting Owners Than Deposit of Other Articles.**

9. In suit by owners of property abutting on street to enjoin public nuisance created by repair and storage of automobiles on street, mere fact that articles deposited in street by defendant were on wheels, and generally used for purpose of travel, entitled defendant to no greater rights than those of another individual depositing other kinds of articles in roadway not used for travel purposes.

**Municipal Corporations—Parking Ordinance Held not to Warrant Storage and Repair of Automobiles on Street, Precluding Injunction Against Public Nuisance Affecting Abutting Owners.**

10. In suit by owners of property abutting on street to enjoin public nuisance created by storage and repair of automobiles on street, city ordinance, permitting parking on street, *held* not to warrant storage and repair of automobiles, but, even if authorizing such acts, would afford no bar to relief by injunction.

**Nuisance—Acts Constituting Nuisance at Common Law may have Tortious Character Removed by Statute Within Certain Limitations.**

11. Within certain limitations, acts which were nuisance at common law may have their tortious character removed by statute.

**Municipal Corporations—Parking Ordinance Does not Authorize Repair and Storage of Automobiles on Street in Disregard of Abutting Owners' Rights.**

12. Parking ordinance is merely police regulation, which settles matter only between owner of automobile and city, and does not authorize repair and storage of automobile on street in disregard of abutting owners' rights.

**Municipal Corporations—Rights of Public and Abutting Owners to Enjoyment of Street cannot be Materially Impaired, Though Street may be Put to Additional Uses.**

13. Right of public to use street and of adjacent lot owners to enjoy street as means of ingress and egress to and from property cannot be materially impaired, though additional uses may be imposed on street, such as subjecting street to new modes of travel or laying gas and water mains.

**Municipal Corporations — City cannot Appropriate Easement of Street to Private Business.**

14. City has right to regulate traffic, but has no power to appropriate easement of street to private business of some individual.

---

14. See 13 R. C. L. 189.

**Municipal Corporations—That Street is Transforming Itself into Automobile Row Would not Justify Use for Repair and Storage of Automobiles, Depriving Abutters of Rights.**

15. In suit by owners of property abutting on street to enjoin · nuisance created by repair and storage of automobiles on street, proof that street is showing evidence of transforming itself into an automobile row would not justify defendant in depriving plaintiffs of established rights of ingress and egress, and to have street remain open for purposes of travel.

**Equity—Doctrine of Laches is Inapplicable to Public Rights.**

16. Doctrine of laches is inapplicable to public rights.

**Municipal Corporations — Laches Held not to Defeat Abutting Owners' Suit to Enjoin Public Nuisance Created by Storage and Repair of Automobiles on Street.**

17. Suit by owners of property abutting on street to enjoin public nuisance created by repair and storage of automobiles on street could not be defeated by laches.

**Municipal Corporations—Abutting Owners, Seeking to Enjoin Public Nuisance Created by Storage and Repair of Automobiles on Street, Need not First have Brought Action at Law.**

18. In suit by property owners on same street to enjoin public nuisance on street, it was not necessary for plaintiffs to first institute an action at law.

**Municipal Corporations — Repeated Use of Street for Repairing, Storing, and Dismantling Automobiles for Period of Three Years Constituted "Public Nuisance," Which Equity Could Abate.**

19. In suit by owners of property abutting on street to enjoin public nuisance created by repair and storage of automobiles on street, defendant's acts in vicinity of plaintiff's property in repairing many automobiles, using street repeatedly for testing motors and storing and dismantling cars thereon, which continued over period of about three years, constituted, "public nuisance," within jurisdiction of equity to abate.

**Municipal Corporations—Use of Street Incident to Travel cannot be Objected to by Abutting Owner, Unless Use Interferes With His Rights.**

20. An abutting owner cannot object to any use of street which is an incident to public travel, unless such use interferes with rights which he possesses as an abutting owner.

**Municipal Corporations—Right to Stop When Occasion Demands is Incident of Right of Travel.**

21. Right to stop when occasion demands is generally an incident of right of travel.

17. Effect of delay in seeking equitable relief against nuisance, see note in 6 A. L. R. 1098.

Municipal Corporations—Defendant, in Abutting Owners' Suit to Abate Nuisance, cannot be Deprived of Right to Park Cars on Street as Incident to Travel.

22. In suit by property owners on same street to enjoin public nuisance on street, created by repair and storage of automobiles on street, defendant cannot be deprived of right to park its cars on street whenever privilege is exercised as an incident to travel, and not in violation of city ordinances or state laws.

Actions, 1 **C. J.**, p. 1094, n. 66, 67, 68.
Appeal and Error, 4 **C. J.**, p. 726, n. 17, p. 897, n. 81, p. 1000, n. 24.
Equity, 21 **C. J.**, p. 217, n. 94.
Motor Vehicles, 42 **C. J.**, p. 627, n. 71 New.
Municipal Corporations, 28 **Cyc.**, p. 856, n. 68, p. 857, n. 70, 71, p. 859, n. 78 New, p. 863, n. 24, p. 865, n. 41, p. 867, n. 57, p. 871, n. 73, p. 873, n. 84, 85, p. 893, n. 70, p. 902, n. 95, p. 904, n. 6, p. 907, n. 56, p. 910, n. 76.
Nuisances, 29 **Cyc.**, p. 1177, n. 53, p. 1207, n. 51, p. 1220, n. 22, 24, 25, p. 1238, n. 57, 58, p. 1241, n. 89, p. 1247, n. 48, p. 1249, n. 69.
Pleading, 31 **Cyc.**, p. 292, n. 84, p. 293, n. 97, p. 294, n. 2, 6, p. 295, n. 10.

From Umatilla: GILBERT W. PHELPS, Judge.

In Banc.

This is a suit for an injunction to restrain the defendant from committing acts which the plaintiffs allege constitute a public nuisance; two of the plaintiffs we shall refer to as the Lowells, the rest of the plaintiffs as the Loves. The Lowells, as tenants by the entireties, own lot four (4), block five (5); the Loves own lot nine (9), block six (6), each of the original town site of Pendleton. The various fractional interests of the Loves is undivided. Both properties are used for residence purposes. The ownership of both the Loves and the Lowells runs to the center of Johnson Street, upon which the lots face each other from opposite sides of the street. The property occupied by the defendant adjoins the Loves, and runs about 125 feet along Johnson Street,

22. Right of private citizen to temporarily obstruct highway or street, see note in 1 **Am. St. Rep.** 840. See, also, 13 **R. C. L.** 210.

and about 100 feet on Court Street, which intersects Johnson Street at right angles. The defendant, a corporation, is engaged in the general automobile business; it sells, exchanges, repairs and stores automobiles.

The complaint alleges that since June of 1924, the defendant has used Johnson Street as a place for the repair of automobiles, the inspection of motors, the storing of automobiles, both day and night, and for the purpose of testing automobile engines; it alleges that the defendant particularly stores in Johnson Street old, used cars, and that the use made by the defendant of Johnson Street has caused others to believe that the residents along Johnson Street have no objection to the street, in front of their homes, being thus employed, and that therefore they also park their cars there for long periods of time. It is averred that as a result, Johnson Street has taken upon itself a shabby, neglected appearance. The complaint further states that the defendant's acts have caused pools of oil to be left in the street, from which oil is tracked into the homes of the plaintiffs; that gases are often created in the testing and running of motors in such quantities that they become offensive, and that in the repair of automobiles in the street, loud noises are caused.

Plaintiffs allege that Johnson Street is a residential street; that the property owners have expended time and money in adorning their properties with shade trees, and making their properties attractive. It is alleged that the defendant's acts interfere with plaintiffs' free access to their properties; disturb the quiet of the plaintiffs; detract from the attractiveness of their homes and from the home atmosphere; that the defendant's acts interfere with the plaintiffs'

view; that the market value of their properties has been diminished 25 per cent, while the desirability of their properties for home purposes has been lessened 50 per cent.

These allegations of the complaint were denied by the answer, which by way of further defense alleged that Johnson Street is devoted almost entirely to business; that the ordinances of the City of Pendleton permit unlimited parking along Johnson Street, and that for more than thirty years the presence of a fire station, church and small mercantile establishments along Johnson Street have caused much parking of vehicles along the street; that at the present time there are several automobile establishments along Johnson Street in the immediate vicinity of plaintiffs' property, and that whatever parking occurs there is due to the natural conditions produced by the general use of automobiles and not by any of the defendant's acts. Based upon the foregoing circumstances the defendant alleges laches on the part of the plaintiffs.

Upon the trial the lower court found that since June, 1924, the defendant had used the block of Johnson Street upon which plaintiffs' homes face as supplemental to the floor area of its establishment, and that it has inspected, repaired and stored automobiles there; it found that the storing of automobiles in Johnson Street occurred "frequently all day, and upon occasions, day and night for several days"; that it had "encumbered this street with old, decrepit and partly dismantled motor vehicles, * * offensive to the well appearing of any street"; that its testing of the mechanical parts of motor vehicles in the street has rendered the street "noisy and uninviting," and that these conditions have caused the street to become

congested so as to render traffic difficult in it. The court found that plaintiffs have suffered special damages and have sustained injuries in addition to and different in kind from that experienced by the public at large by reason of the defendant's acts in the following particulars: denial to plaintiffs of access to their homes; a lessening in the market value of their homes, and a diminishing in desirability of their properties for home purposes; disturbances through noises caused in the street by defendant's acts; limiting the view from their windows and porches and substituting for the view previously had rows of parked automobiles. It also found that in the absence of the defendant's acts, the market value of the Lowell property was $7,500, and of the Love property $5,000.                                    MODIFIED.

For appellant there was a brief and oral argument by *Mr. James A. Fee.*

For respondents there was a brief and oral arguments by *Mr. Edward J. Clark* and *Mr. Archie C. McIntyre.*

ROSSMAN, J.—1. An appeal in an equity suit in this state is tried in the appellate court *de novo:* *Morse* v. *Whitcomb,* 54 Or. 412 (102 Pac. 788, 103 Pac. 775, 135 Am. St. Rep. 832). We have therefore read carefully all the testimony and have considered fully all of the exhibits. For us to set forth in these reports our comparison and consideration of the evidence would accomplish no permanent good. We shall therefore confine ourselves to the statement that we believe that a preponderance of the evidence supports the foregoing findings of the trial judge; he was able and bore a well-deserved

reputation for industry and judicial capacity; his residence in Pendleton gave him a familiarity with this matter, which justifies us in additional confidence in his findings.

2. Numerous objections were made to the introduction of evidence. In most instances where objection was made, the testimony was taken over the objection. Fourteen assignments of error are based upon such introduction of evidence. In many instances when the trial judge received the evidence, he stated that he believed it was inadmissible, but that the proponent could take it for the benefit of the record. We find that enough admissible testimony was received to support the findings referred to above; therefore we shall not consider these individual assignments of error grounded upon the reception of evidence.

3. Based upon the rule that an individual cannot sue to enjoin a public nuisance unless he has sustained an injury special and peculiar to himself, the defendant contends that it necessarily follows that the plaintiffs cannot join as parties plaintiff. Defendant demurred to the complaint "on the ground that there is a misjoinder of parties plaintiff; * * on the ground that said complaint does not state facts sufficient to constitute a cause of suit." When the first witness was called, the defendant interposed an objection on the ground "that there is a misjoinder of parties plaintiff, and for the further reason that the complaint does not state facts sufficient to constitute a cause of suit." Section 68, Or. L., provides a party defendant may demur to the complaint when it appears upon the face of the complaint that there is a defect of parties. However, we have held,

" * * that, as a ground of demurrer, means too few, and not too many. A demurrer alleging this particular objection can be interposed, therefore, only in cases of a nonjoinder of necessary plaintiffs or defendants, and never in case of a misjoinder." *Tieman* v. *Sachs,* 52 Or. 560 (98 Pac. 163).

Our cases are collected in *Williamson* v. *Hurlburt,* 99 Or. 336 (195 Pac. 562). This case is discussed in an illuminating manner in 1 Or. Law Review, 38. No error was committed in overruling the demurrer based upon misjoinder of parties plaintiff. The complaint stated a cause of suit; therefore no error was committed in overruling the demurrer based on this ground. Section 68, Or. L., also provides that the defendant may demur when it appears upon the face of the complaint "that several causes of action have been improperly united." Section 393, Or. L., provides: "All persons having an interest in the subject of the suit and in obtaining the relief demanded, may be joined as plaintiffs * * ." Had there been two suits, one by the Loves, the other by the Lowells, the testimony in each would have been similar, with the exception of the effect of the acts of the defendant upon the individual parties plaintiff. Under these circumstances we believe that the observations of the Massachusetts court in *Cadigan* v. *Brown,* 120 Mass. 493, as referred to with approval in the late case of *Stodder* v. *Rosen Talking Machine Co.,* 241 Mass. 245 (135 N. E. 251, 22 A. L. R. 1197), are peculiarly apt.

" * * The plaintiffs * * have a common interest in the subject of the bill. They are affected in the same way by the acts of the defendants, and seek the same remedy against them. There is no danger of confusion in the trial, or of injustice to the defendants, from the joinder of the plaintiffs; but the rights

of all parties can be adjusted in one decree, and a multiplicity of suits is prevented."

See, also, 20 R. C. L., Nuisances, § 95, p. 482. We have held to similar effect in *Dyer* v. *Bandon,* 68 Or. 406 (136 Pac. 652). Defendant has called to our attention *Rowbotham* v. *Jones,* 47 N. J. Eq. 337 (20 Atl. 731, 19 L. R. A. 663). We find nothing in this case at variance with the above. Upon the other hand the court stated the rule as follows:

"Courts of equity have always exercised a sound discretion in determining whether parties are properly adjoined in a suit. Their object has been to adopt a course which will best promote the due administration of justice without multiplying unnecessary litigation on the one hand, or drawing suitors into needless and oppressive expenses, and confusing the courts with many issues, on the other. * * The meaning of the rule, so far as it permits several to join as complainants, is that all the grievances complained of shall affect all the complainants, not precisely at the same instant, and in the same degree, but in the same general period of time, and in a similar way, so that the same relief may be had in the single suit whether there be one, two, or a dozen plaintiffs."

4. Defendant also called to our attention other cases, of which *Fogg* v. *Nevada Ry. Co.,* 20 Nev. 429 (23 Pac. 840), is an example. In this case several owners of distinct pieces of property sought to enjoin a nuisance which affected all of them. The court held that a demurrer should have been sustained for misjoinder of causes of suit. We believe such a rule is too strict; the application of it results in delay; it diminishes needlessly the quantity of business which a court can transact; it brings inconvenience to witnesses, parties and attorneys, and thereby increases

the cost of litigation. Had a similar result followed in the Circuit Court of this state, all of the witnesses and attorneys would have had to attend the sessions of the court twice without any good result coming therefrom. In this case injury to the plaintiffs and damages were alleged, not for the purpose of recovery, but in order to show that the defendant's acts had affected the plaintiffs, and had done so in a manner different from that of other members of the community. If this was an action at law for the recovery of those damages, then the injury, its time and amount would have become the primary subject of inquiry and thus there might have been some reason for the separation of the two cases; but this situation has no application in this case: *Foreman* v. *Boyle,* 88 Cal. 290 (26 Pac. 94); *Palmer* v. *Waddell,* 22 Kan. 352. We are, therefore, of the opinion that no error was committed in overruling the demurrers and the objections.

5. From the evidence, we understand that Johnson Street is the only street to which the property of the plaintiffs have access; their properties are almost in the center of the block; all of the acts of which they make complaint occurred in Johnson Street immediately in the vicinity of their homes, while many of the acts of which they make complaint occurred upon property, the fee of which was vested in the plaintiffs subject only to an easement of the public for travel purposes. The owner of the abutting property, in one respect, at least, sustains to the street a position different from that of anyone else; this peculiar position has been well stated by a writer: "For instance, the owner of the soil of the way has right to all above and under the ground, except only the right of the passage for the King

and his people." Bacon's Abridg., title, Highways.
The rights of one who is not an abutter are much
more limited than those of the abutter or the sover-
eign; the latter may take the rocks and soil from
the roadway and use them for repair purposes, but
one who is neither an abutter nor the sovereign may
commit no such act. The rights of the owner of
property abutting upon a street have been stated in
the following language:

"(1) the right of access, often referred to as that
of ingress and egress; (2) the right of light and air;
(3) the right of view; (4) the right to have the street
kept open and continued as a public street for the
benefit of their abutting property; and (5), as stated
in a recent New York decision, whatever adds to the
value of the street to the abutter." 3 McQuillin,
Municipal Corp., § 1322.

The abutter's rights have been recognized and
protected by this court from the earliest of times.
Thus in *Parrish* v. *Stephens,* 1 Or. 73, we held:

"Defendants say further, that the decree ought
not to stand, because an individual cannot interpose
by injunction to prevent a public nuisance. The bill
alleges that if defendants proceed with their build-
ings, the injury to plaintiff will be irreparable; and
certain it is, that if plaintiff is entitled to the use
and advantage of a public levee in front and in the
vicinity of his block, the exclusive occupation of such
levee by the erection of houses thereon would be
greatly prejudicial to his interests. The damages
to the property for purposes of trade and commerce,
to which it is adapted by its location, can hardly be
estimated. So long as the nuisance continued, so
long would the business facilities of such property be
obstructed or destroyed. There is no adequate
remedy at law. Suit after suit would have to be
brought by plaintiff, as the damages are forever ac-
cruing, and he would be compelled at last to submit

to the wrong, or to what is less desirable, the burden of an interminable litigation."

One of our later decisions recognizes that the very nature of the situation of the abutter may cause him to suffer peculiar and special damages whenever a nuisance occurs in the street. Thus in *Bernard* v. *Willamette Box & Lumber Co.*, 64 Or. 223 (129 Pac. 1039), we held:

"The owner of a town lot suffers peculiar and special damages, differing in kind from that to which the public is subjected by the obstruction of a part of the public street immediately in front of his premises, whereby ingress and egress to and from such abutting property is prevented, and such owner may maintain a suit in equity to prevent or remove the common nuisance."

To the same effect see *Kurtz* v. *Southern Pacific Co.*, 80 Or. 213 (155 Pac. 367, 156 Pac. 794), wherein we said:

"The plaintiff being the owner in fee, subject to the public easement of that part of Trade Street north of the middle line thereof in front of and abutting upon his real estate, the excavation in the highway near the sidewalk on the south side of the premises, for the purpose of building the spur switch, evidences a 'taking' of his property without just compensation * * ."

A writer expresses the rule of the law applicable in these words:

"An abutting owner has two distinct kinds of rights in a highway, a public right which he enjoys in common with all other citizens, and certain private rights which arise from his ownership of property contiguous to the highway, and which are not common to the public generally; and this regardless of whether the fee of the highway is in him or not. These rights

are property of which he may not be deprived without his consent, except upon full compensation and by due process of law.''

We believe that our previous decisions are all to a similar effect: *Blagen* v. *Smith,* 34 Or. 394 (56 Pac. 292, 44 L. R. A. 522); *Baines* v. *Marshfield & Sub. R. Co.,* 62 Or. 510 (124 Pac. 672); *Wessinger* v. *Mische,* 71 Or. 239 (142 Pac. 612); see, also, 14 R. C. L., p. 215, § 183, and p. 220, § 186. *Luhrs* v. *Sturtevant,* 10 Or. 170, and *Von Buskirk* v. *Bond,* 52 Or. 234 (96 Pac. 1103), do not contain anything to the contrary. In the former of the two cases, the plaintiff was not an abutter and the court said:

''No special injury to his property is averred, nor any personal injury alleged to exist, * * it is not apparent in this respect, that he suffers an inconvenience from the obstruction not common to all, certainly no peculiar or special injury to him independent of a general injury to the public.''

6, 7. And so the court reverted to the common rule that one who suffers no injury special and peculiar to himself, cannot maintain the suit. In the latter of the two cases the complaint did not allege that plaintiff's lands abutted upon the roads which the defendants closed, nor that these roads were the only ones accessible to the plaintiff; by inference the plaintiff admitted that there were other roads available to his use. The allegation in which he attempted to allege an injury was held only a conclusion of law. The legal existence of the road was not admitted by the defendant, but was expressly denied. We believe, therefore, that the plaintiffs have brought themselves within the rule previously adhered to by this court. The obstruction to access need not be continuous and complete; it is sufficient if the hindrance is only occa-

sional and extended for a few hours at a time: *Baines* v. *Marshfield & Sub. R. Co., supra.* And as has been said a number of times:

"It is no answer to the charge of nuisance that, even with the obstruction in the highway, there is still room for two or more wagons to pass, nor that the obstruction itself is not a fixture." *Hoefler* v. *Buck,* 110 Misc. Rep. 402 (180 N. Y. Supp. 563).

8. These rights of the abutting owner concern themselves not only with the property immediately in front of his lot, but extend to a sufficient area near by to make available to him the full enjoyment of the street. Thus we said in *Morse* v. *Whitcomb, supra:* "Nor are plaintiffs limited to the part of the roadway or easement in front of their lots." See, also, *Cypress Lawn Cemetery Assn.* v. *Lievre,* 55 Cal. App. 228 (203 Pac. 150); *Benjamin* v. *Storr,* 30 Term Rep. (Eng.) 362. We believe that the plaintiffs suffered injuries sufficiently peculiar and special to enable them to present this case.

9. The mere fact that the articles deposited in the roadway by the defendant were on wheels, and generally used for the purposes of travel, entitle them to no greater rights than those of another individual who deposits in the roadway other kinds of articles not commonly used for travel purposes. From the earliest of times the courts have declared that the streets and highways are for the purpose of travel. Thus in the year 1664, in the case of *Maynel* v. *Saltmarsh,* 1 Keble, 847 (83 Eng. Reprint, 1278), we find the plaintiff bringing his action charging the defendant with "erecting posts in the highway * * so stopt the way, that his corn in his close was corrupted and spoil'd."

The plaintiff had a judgment which was affirmed. This was followed by a number of others all to the same effect. In 1812 came *Rex* v. *Cross,* 3 Camp. Rep. (Eng.) 224, in which the defendant was charged with the maintenance of a nuisance; the facts were:

"The defendant is proprietor of a Greenwich stage-coach, which comes to London twice a day, and draws up at the place in question, nearly opposite Messrs. Drummond's banking-house. There it remains for about three-quarters of an hour, taking in parcels, and waiting for passengers. On Sundays, and occasionally at other times, the defendant employs extra coaches, which ply there in the same manner. A great number of other stage-coaches from Greenwich and the adjoining villages come to the same spot. There are generally six or seven in a row close to the curb stone; often two tiers, and sometimes three."

The court, speaking through Lord ELLENBOROUGH held:

"But every unauthorized obstruction of a highway, to the annoyance of the King's subjects, is an indictable offense. * * A stage coach may set down or take up passengers in the street, this being necessary for public convenience; but it must be done in a reasonable time; and private premises must be procured for the coach to stop in during the interval between the end of one journey and the commencement of another. No one can make a stable-yard of the King's highway."

And the modern version of this the Iowa court tells us is: "No one can make a private garage of the public street." *Pugh* v. *Crawford,* 176 Iowa, 593 (156 N. W. 892, L. R. A. 1917F, 345). A vast variety of objects placed in the street to the obstruction of the passageway, or in interference with the easements of light, air or lateral support have been held to

constitute nuisances. Thus in *Strong* v. *Sullivan,* 180 Cal. 331 (181 Pac. 59, 4 A. L. R. 343), a lunch-wagon in the public street obstructed the ingress and egress to the plaintiff's property; the court held plaintiff was entitled to injunctive relief. In *Reed* v. *City of Seattle,* 124 Wash. 185 (213 Pac. 924, 29 A. L. R. 446), the complaint alleged that the city started construction of a gasoline filling station in the street adjacent to plaintiffs' property. The lower court sustained the defendant's demurrer. This was held error, because the abutting property owner is entitled to insist that the street remain open for the purpose of travel. Likewise a bay-window in the second story of a house, sixteen feet above the sidewalk, projecting between three and four feet beyond the line of the street, was held a public nuisance: Elliott, Roads and Streets, § 830. Flower-stands used in the public streets for the sale of flowers have been dealt with likewise: *Cypress Lawn Cemetery Assn.* v. *Lievre, supra.* While even corner loungers in the public street have been held to constitute a nuisance: *Norristown* v. *Moyer,* 67 Pa. 355. A peddler's stand which interferes unreasonably with the right of travel in the streets has been held to constitute a nuisance in a suit wherein a taxpayer was the plaintiff: *United Cigar Stores Co.* v. *Von Bargen,* 7 Ohio N. P. Rep. 420. A public scale put in the street pursuant to municipal authority has been dealt with likewise: *Minnich* v. *Lutz,* 18 Ohio N. P. Rep. 601. The entire situation resolves itself down to the well-established principle of law that the streets and the highways are for the purpose of travel, and one cannot eke out the inconvenience of his own premises by taking in the public highway.

Under the foregoing, it must necessarily follow that the plaintiffs may maintain this suit, unless the city ordinances permitting the parking on Johnson Street have legalized the defendant's acts, or unless the plaintiffs are guilty of laches.

10. The city ordinances that the defendant relies upon do not, in our opinion, warrant it in storing and repairing automobiles in the street, nor in its acts of testing motors and dissembling automobiles; but even if the ordinances were capable of such construction, we do not understand that they would prevent the plaintiffs from securing the relief for which they pray.

11. Indeed, within certain limitations acts which were nuisances at common law may have their tortious character removed by statute.  Thus it has been said:

"It is settled that, within constitutional limits not exactly determined, the legislature may change the common law as to nuisances, and may move the line either way, so as to make things nuisances, which were not so, or to make things lawful which were nuisances, although, by so doing, it affects the use or value of property." *Commonwealth* v. *Parks,* 155 Mass. 531 (30 N. E. 174).

And in Pom. Eq. Juris. we find:

"Acts which at common law are nuisances may be legalized by statute, if such legislation does not amount to the taking or damaging of property forbidden by constitutional provisions.  The effect of such statutes is to take away the wrongful character of the acts legalized; they are no longer torts, and hence, the remedy by injunction against them, of course, ceased."  Section 1955.

12. But we do not believe that the parking ordinances of Pendleton were intended to convert the

streets into repair-shops and storage spaces, disregardful of the protests of the abutter. A parking ordinance is nothing more than a police regulation which settles the matter only between the owner of the automobile and the city. Thus as was said by one court:

"It simply said, in effect, to the persons operating these cabs, so far as the city is concerned, in the congested district of the city, you may establish taxi stands at the following designated places, and the police will not molest you." *Errbank* v. *Yellow Cab Co.*, 84 Ind. App. 144 (149 N. E. 647).

We believe that the same construction is the only proper one to place on the ordinances of the City of Pendleton.

13, 14. It is well established that while additional uses may be imposed upon a street not submersive of or impairing the original street, such as subjecting a street to new modes of travel, or laying down gas or water mains; yet the rights of the public to use it as a street and of the adjacent lot owner to enjoy it as a means of ingress to and egress from his property cannot be materially impaired. The city has the right to regulate traffic, but it has no power to appropriate the easement of the street to the private business of some individual. The ineffectiveness of franchises, licenses and various privileges granted by city ordinances to deprive one of a property right is illustrated in the following cases: *Cohen* v. *Mayor of New York,* 113 N. Y. 532 (21 N. E. 700, 10 Am. St. Rep. 506, 4 L. R. A. 406); *Strong* v. *Sullivan, supra; McQuaid* v. *Portland & Vancouver Ry. Co.,* 18 Or. 237 (22 Pac. 899); *Baines* v. *Marshfield & Sub. R. Co., supra; Kurtz* v. *Southern Pac. Co., supra; Campbell* v. *Mayor,* 1 K. B. 869; *Brana-*

*han* v. *Cincinnati Hotel Co.*, 39 Ohio St. 333 (48 Am. Rep. 457); Elliott, Roads & Streets, § 834; 13 R. C. L., Highways, § 183.

15. And even if we should believe, as the defendant contends, that Johnson Street is showing some evidence of transforming itself into an automobile row, or gasoline alley, still this would not justify the defendant in depriving the plaintiffs of their established rights of ingress and egress and to have the street remain open for the purpose of travel. It was said by this court in *Kurtz* v. *Southern Pacific Co., supra:*

"He is entitled to make such use of his own buildings as suits his convenience or gratifies his fancy, and, so long as he does not trench upon the public right, he must be protected in the enjoyment of his prerogative."

16, 17. It is well established that the doctrine of laches is inapplicable to public rights. As was said by Lord ELLENSBOROUGH, in *Rex* v. *Cross, supra:* "It is immaterial how long the practice may have prevailed, for no length of time will legitimate a nuisance." And as was said in *Strong* v. *Sullivan, supra:*

"Nor does the finding that the street in front of plaintiff's property had been used every night by defendant and his predecessor for more than four years amount either to a finding of laches or of the operation of the statute of limitations against plaintiff. This nuisance was not of a permanent character, but was a continuing one. It involved no permanent structure, but was committed daily by the bringing of defendant's ambulatory cafe in front of plaintiff's building. No lapse of time can legalize a public nuisance and a prescriptive right cannot be maintained against a public nuisance where the ac-

tion is brought by a citizen who has suffered special injury in consequence thereof.''

18. It is not necessary for the plaintiff to first institute an action at law: *Bernard* v. *Willamette Box & Lumber Co., supra.* We have not undertaken to distinguish case by case the numerous authorities cited in the able and exhaustive brief of counsel for the appellant. But we believe that we have accomplished the same result by a consideration of the principles involved; to have undertaken to do more would unnecessarily lengthen this decision.

19. It follows from the foregoing that we believe that the defendant's acts in Johnson Street in the immediate vicinity of plaintiffs' abutting property constitute a public nuisance. One automobile parked in a street, as was said in *Bradley* v. *City of Oskaloosa*, 193 Iowa, 1072, 188 N. W. 896, may not constitute a nuisance; perhaps not in Oskaloosa, but a constant repetition of parking many cars in the street; many acts of repairing automobiles; using the street repeatedly for testing motors and the projection of much partially consumed gas into the atmosphere, surely warrants the finding that these acts when continued over a period of about three years constitute a nuisance. Such acts fall within the classification of repeated and continuing conduct, the damages arising from which can be estimated only by conjecture and not by any accurate standard; it is this situation which gives equity its jurisdiction to abate the nuisance.

20–22. An abutter cannot object to any use of the street which is an incident to public travel, unless such use interferes with the rights which he possesses

as an abutting property owner.  The right to stop when the occasion demands, generally is an incident of the right of travel.  We do not understand that this incidental right which the defendant enjoys, together with all others, when using the street for travel, is one that has caused the plaintiffs any inconvenience or damage; in fact, we do not understand that the plaintiffs have complained of the defendants' exercise of this privilege.  The decree of the lower court restrained the defendant from any parking along Johnson Street.  While the decree of the lower court will be affirmed in all other respects, it must be so modified as to permit the defendant to park its cars along Johnson Street, as in all other parts of Pendleton, whenever this privilege is exercised by it as an incident to travel and not in violation of city ordinances or state laws; otherwise the decree is affirmed.  Costs to neither party.

MODIFIED.

BELT, J., was not present at the hearing of this case.